## FOUR PACKAGES *v.* UNITED STATES.

1. On the arrival of the steamship "Hansa," at her pier or dock at Hoboken, N. J., certain packages were, without a permit or the knowledge of the customs inspectors, unladen by her officers as the baggage of steerage passengers. The customs officers having there examined the packages, and found them to contain articles subject to duty, so marked them for identification, and sent them to Castle Garden, New York City, for further examination. Upon such further examination at that place, and the failure to pay the duties, the packages were sent to the seizure-room at the custom-house. *Held,* that the seizure was made at Castle Garden, and not on the pier or dock at Hoboken.

2. It being fully proved that the packages were so unladen, the court below did not err in directing a verdict condemning them for a violation of the fiftieth section of the act of March 2, 1799 (1 Stat. 665).

ERROR to the Circuit Court of the United States for the Southern District of New York.

This was an information filed by the United States in the District Court, May 8, 1873, for the condemnation and forfeiture of four packages, seized by the collector of customs for the port of New York as the property of Hugo Seitz and Carl Breidbach, composing the firm of Hugo Seitz & Co., for a violation of sects. 24, 46, and 50 of the act of Congress approved March 2, 1799 (1 Stat. 627), entitled " An Act to regulate the collection of duties on imports and tonnage," and sect. 4 of the act of July 18, 1866 (14 id. 178), entitled " An Act further to prevent smuggling, and for other purposes." The first count of the information alleges that on April 25, 1873, the collector of the port of New York " seized on land the property described as four packages containing human hair and other articles, which he now has within said Southern District of New York, as forfeited to the United States," having been unladen and delivered from the steamship " Hansa," " within said port and collection district, without a permit from the collector and naval officer for such unlading or delivery," contrary to the fiftieth section of the act of March 2, 1799.

To maintain the issue on its part, the United States introduced evidence to show that the " Hansa " arrived at New York from Bremen, April 23, 1873, and that the claimants came in

her as steerage passengers, and brought with them the said packages; that on her arrival she proceeded to her dock or pier at Hoboken, N. J., and commenced landing her passengers and their baggage on the dock; that two inspectors, specially detailed by the collector of customs for the port of New York for the examination of the baggage of steerage passengers, found said packages on the dock, they having been there unladen and delivered from said vessel, and claimed by the claimants as their property; that Seitz and Breidbach went to Germany in March, 1873, having in contemplation the establishment, on their return, of a partnership in the business of hair-dressing and the manufacture and sale of switches; that the human hair found in said packages was purchased in Germany for use in the manufacture of said switches, and that the other articles were fancy goods bought for and at the request of the father of Briedbach, who was a dealer therein in New York, and were intended to be delivered to him for sale. It was also proved that said packages were produced to the officers of the "Hansa" by the claimants, on engaging passage, as their baggage, and that they, with the baggage of other steerage passengers in said vessel, were put upon the dock at Hoboken by her officers, without any knowledge on their part of the contents thereof; that said packages having been subsequently examined on the pier by the inspectors, and found to contain dutiable articles, were so marked, in order to identify them at Castle Garden, where the proper officers were detailed for the purpose of collecting the duty, the baggage of steerage passengers being landed or delivered at that place, and the duties never being paid or collected on the pier at Hoboken; it was also proved that neither of said packages nor its contents was entered upon the manifest of the "Hansa," and that no permit or document in the nature of a permit, either in terms or legal effect, for the unlading or delivery of said packages or their contents had been granted by the collector of the port of New York; and that said packages having been sent to Castle Garden, were there seized and sent to the seizure-room at the custom-house in the city of New York. There was also evidence tending to show that the claimants imported said merchandise with the intent to secure its landing and

delivery without paying the lawful duties thereon. The claimants thereupon offered in evidence the following papers as and for permits for the unlading and delivery of their goods : —

"Custom House,
"New York, April 19, 1873.

"The inspector on board the steamer 'Hansa,' from Bremen, will examine the baggage of all the passengers, and if nothing be found but personal baggage, permit the same to be landed, and send all other articles not permitted, in due time, to the public store, 119 Greenwich Street and 24 Trinity Place.

Tho's G. Baker, *Dep. Collector.*
"E. Manning, *Naval Officer.*"

"*General Order.*

"Custom House, Port of New York,
"Collector's Office, April 24, 1873.

"The inspector on board the German steamship 'Hansa,' Brickenshime, master, from Bremen *via* Southampton, will send to the       public store, No.     Hoboken,     all packages, when landed, and for which no permit or order shall have been received by him contrary to this direction, except perishable articles, gunpowder, new hides, explosive substances not permitted for consumption, which you will retain on board, and send notice of to this office. The usual weighing, gauging, and measuring to be done before sending goods under this order.

"R. Wynkoop, *Dep. Collector.*
"J. N. P., Hoboken."

The plaintiff admitted that said papers came from the official records of the office of the collector of the port of New York, but claiming that they were issued in connection with the landing of passengers and their baggage on the arrival of the "Hansa," and not as the permits required by law for unlading or delivering the goods, wares, and merchandise in suit, objected to their admission in evidence. The court sustained the objection and excluded the papers, whereupon the claimants excepted. The claimants also gave evidence tending to show their innocence of any intent to secure the unlading or delivery of the goods without paying the duties thereon. They thereupon requested the court to charge the

jury to find for them on the ground that no seizure of the goods in question had been proved within the jurisdiction of the court; but the court declined so to charge, and the claimants excepted.  The court thereupon directed the jury to return a verdict of condemnation of the goods, wares, and merchandise, in that the same were unladen and delivered from the " Hansa " without a permit, contrary to the fiftieth section of the act of March 2, 1799.  The claimants requested the court to charge the jury that the plaintiff could not recover under the fiftieth section of the act of 1799; that no law of the United States forbids steerage passengers from bringing dutiable articles to this country with their personal effects as baggage, and that there is no law for forfeiting goods so brought; that the goods in question were not landed without a permit; that, having been landed under the direction and supervision of the officers of the customs, or under a baggage or general order permit, they were not forfeited under the fiftieth section of the act of 1799; that upon the facts in the case the claimants did not land the goods; and that in the absence of fraudulent intent on their part in the importation of the goods the government could not recover.

The court refused so to charge, and also to submit to the jury as questions of fact whether the goods had been landed without a permit in violation of said fiftieth section, or whether they were imported contrary to law.

The jury thereupon returned a verdict condemning the goods, and judgment of forfeiture was entered thereon; and that judgment having been affirmed by the Circuit Court, the claimants then brought the case here.

*Mr. S. G. Clarke* for the claimants.

The information is defective in not alleging a seizure on land within the Southern District of New York, and is not cured by the allegation that the collector " now has them within the district."

*Non constat*, but that the seizure was in New Jersey, and the goods then brought within the district.

This is a jurisdictional fact, and necessary to be averred and proved.  Act of 1789, sect. 9, 1 Stat. 77; *Keene* v. *United States*, 5 Cranch, 304; Act of March 2, 1799, sect. 89; *The Washington*, 4 Blatchf. 101; *The Fideleter*, 1 Abb. (U. S.) 577.

Where the jurisdiction does not appear on the face of the record, it may be taken advantage of in arrest of judgment or on error. *Donaldson* v. *Hogen*, Hemp. 423; *The Washington, supra.*

The evidence shows that, in point of fact, the seizure was made in the district of New Jersey. It was there that the customs officers took charge of the goods, and deprived the claimants of their possession. It is said, however, that having given a stipulation for the value of the goods proceeded against, we have admitted the jurisdiction of the court.

But consent cannot give jurisdiction to the Federal courts. *Bobyshall* v. *Oppenheimer*, 4 Wash. 482; *Dred Scott* v. *Sandford*, 19 How. 393. Or to any court of limited jurisdiction, proceeding *in rem*. *The Montague*, 4 Blatchf. 461; *United States* v. *Shares of Stock*, 5 id. 231; *United States* v. *Ninety-two Barrels*, 8 id. 480.

The proceedings being *in rem*, they are void, if it appears that the court is without jurisdiction.

The taking of the stipulation was as much a void act as any thing else, unless the seizure was made in the district; the court had no jurisdiction to do any thing.

As soon as the want of jurisdiction appeared, proceedings should have been stayed. *Fisk* v. *Union Pacific Railroad*, 6 Blatchf. 362; *Rhode Island* v. *Massachusetts*, 12 Pet. 657.

The evidence offered and excluded was competent to show a sufficient permit for placing the packages upon the dock. *United States* v. *Ninety-five Boxes*, 19 Int. Rev. Rec. 101.

The goods were not unladen and delivered from the steamship without a permit. *United States* v. *Ninety-five Boxes, supra; Caldwell* v. *United States*, 8 How. 366.

If the placing of the packages on the dock with all the other baggage on board the steamship for examination did not forfeit them, then it is clear that they are not forfeited under the first count of the information. *Six Hundred and Fifty-one Chests of Tea* v. *United States*, 1 Paine, 499; *Peisch* v. *Ware*, 4 Cranch, 347.

The fact that the goods were merchandise and not personal effects can have no bearing upon this question of landing without permit. The penalty of forfeiture is imposed upon goods

as well as merchandise, and the personal effects are certainly goods; the fact that they might not be dutiable makes no difference. *The Elizabeth*, 2 Mason, 407.

Therefore, if these packages were forfeited by being put over the side of the vessel, so were all the trunks which came over in the same manner, and likewise the vessel herself.

*Mr. Assistant-Attorney-General Smith, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Goods imported in any ship or vessel from any foreign port or place are required by the act of Congress to be landed in open day, and the express provision is, that none such shall be landed or delivered from such ship or vessel without a permit from the collector and naval officer, if any, for such unlading and delivery.   1 Stat. 665; Gen. Reg. (1857), 145.

Persons violating that regulation are subjected to penalties; and the further provision is, that all goods, wares, and merchandise so unladen or delivered shall become forfeited, and may be seized by any of the officers of the customs.

Four imported packages containing human hair and other dutiable articles were seized on land by the collector; and the information alleges that the goods were brought into the port of New York in the steamer therein named, from a foreign port, and that the four packages were unladen and delivered from the steamer in which they were imported into the port without a permit from the collector and naval officer for such unlading and delivery.   Seasonable appearance was entered by the claimants, and they pleaded the general issue, that the goods did not become forfeited as alleged, which was duly joined.

Pursuant to the issue between the parties, they went to trial before the district judge and a jury.   Evidence to prove the allegations of the information was introduced by the district attorney, showing that the steamer arrived at the port from a foreign port at the time alleged, and that the claimants then and there came in the vessel as steerage passengers, and that they brought with them the said four packages containing the described goods; that on the arrival of the steamer within the port she proceeded to the dock or pier at Hoboken, N. J.,

owned by the Bremen line of steamships, to which she belonged, and commenced the landing of her passengers and their baggage on the dock; that two inspectors of customs, especially detailed by the collector of the port for the examination of the baggage of the steerage passengers, in the execution of their duty found the said four packages upon the said dock, the same having, without the knowledge of the inspectors, been there unladen and delivered on said dock from the vessel by the officers of the vessel or their employés, and having been then and there claimed by the claimants as their property; that the said four packages were each in a wooden box or case similar to boxes or cases used for the package of merchandise, with a cover connected therewith by hinges; that in each box were some articles of wearing-apparel and other personal effects not dutiable, but there was besides such articles a large quantity of dutiable merchandise.

Testimony was also introduced which showed that the claimants, being residents and in business in New York City, went together from there to Germany the month previous; that they then had in contemplation, on their return, the establishment of a partnership with each other to carry on the business of hairdressing and the manufacturing of switches, and that the father of the junior partner is a dealer in fancy goods in New York City; that the human hair found in the packages was purchased in Germany to be used in the manufacture of switches for sale; and that the residue of the merchandise contained in the packages was fancy goods bought for and at the request of the father of the said junior partner, to be brought and delivered to him for sale in his said business.

Proof was also introduced by the district attorney showing that the packages were produced to the officers of the steamer by the claimants when they engaged their passage, as their baggage, and that the packages were unladen by the officers of the steamer and put upon the dock at the place of landing as such, without knowledge of their contents by the officers, with other baggage of the steerage passengers.

Two of the packages were opened and examined at the place where they were unladen; and it being found that each contained dutiable goods not on the manifest, the inspectors placed

upon each of the four packages the usual marks to show that they had not been passed, but were to be sent to Castle Garden for further inspection and for the collection of the duties to which the same were subject; that no permit or document in the nature of a permit, either in terms or legal effect, for the unlading or delivery of the goods had been granted by the collector and naval officer of the port, otherwise than as set forth in the two exhibits offered in evidence by the claimants.

Those two exhibits were offered in evidence by the claimants as the permits required by law for the unlading and delivery of the four packages in question; but the district attorney objected to the admission of the same as not being the permits which the act of Congress requires in such a case; and the court sustained the objection and excluded the same, to which ruling the claimants excepted. Exceptions were also taken to the charge of the court. The verdict and judgment were for the plaintiffs; and the defendants sued out a writ of error and removed the cause into the Circuit Court, where the judgment of the District Court was affirmed. Though defeated in both of the subordinate courts, the respondents removed the cause into this court by the present writ of error.

Three principal errors were assigned, which will be separately considered: 1. That the seizure of the goods in question was not made at a port within the jurisdiction of the District Court. 2. That the court erred in refusing to admit in evidence the exhibits offered by the claimants as permits for the unlading and delivery of the goods. 3. That the court erred in directing the jury to find a verdict in favor of the plaintiffs.

Much discussion of the first assignment of error is unnecessary, as it is clear that the seizure of the four packages was made at Castle Garden, where the goods were sent by the inspectors present on the wharf, for final examination. Sufficient appears to show that the duties in such cases are never collected on the wharf; that the examination made is only for the purpose of passing the baggage which does not contain any dutiable articles, and that the baggage which does contain dutiable goods is uniformly sent to Castle Garden for the collection of the duties, or to be dealt with as the law directs. Suffice it to say that no seizure was made on the wharf where the goods

were landed, and that the proceeding in sending the goods to the place where the seizure was made was in all respects correct and in accordance with the usage of the port.    *The Propeller Commerce*, 1 Black, 574 ; 3 Greenl. Evid. (8th ed.), sect. 395 ; *The Slavers (Kate)*, 2 Wall. 350.

Due seizure was made in this case at Castle Garden, and consequently the first assignment of errors must be overruled.

Nor does the second assignment of error require any considerable examination, as it is too clear for argument that neither of the exhibits offered in evidence was a permit for landing and delivering any package which contained dutiable merchandise. Opposed to that is the suggestion of the respondents, that two of the inspectors were present on the wharf when the officers of the steamer unloaded the packages and placed them with the other baggage for examination ; but it is wholly immaterial whether the inspectors were present or absent at the moment the packages were landed from the steamer, as it clearly appears that as soon as the inspectors discovered that the packages contained dutiable merchandise, they ordered the same to be sent to the proper place for further inspection.

Taken as a whole, the evidence fully proved that the packages were unladen and delivered without the permit required by the act of Congress ; and inasmuch as there was no opposing testimony, the direction of the court to the jury to return a verdict for the plaintiffs was entirely correct.    *Improvement Company* v. *Munson*, 14 Wall. 442 ; *Ryder* v. *Wombwell*, Law Rep. 4 Ex. 39 ; Law Rep. 2 P. C. 235.

Repeated requests for instruction were presented by the respondents, all of which were refused.    Some of the rulings of the court in refusing these requests are also assigned for error, but it is wholly unnecessary to examine those assignments, as the instructions given disposed of the case.

*Judgment affirmed.*