## Case No. 16,512.

### UNITED STATES v. THREE PARCELS OF EMBROIDERY.

[3 Ware, 75; [1] 19 Law Rep. 140.]

District Court, D. Massachusetts. June 11, 1856.

INFORMATION OF FORFEITURE — CUSTOMS LAWS — FALSE INVOICE—PARTIES.

1. In an information in rem for a forfeiture alleged to be incurred under the collection act of 1799, c. 22. § 66 [1 Stat. 677], it is essential to charge that the goods were entered under a false invoice, and that they were falsely invoiced with the design to evade the duties thereupon, or some part thereof.

[Distinguished in Friedenstein v. U. S., 8 Sup. Ct. 842. 125 U. S. 232.]

2. Therefore, where such an information only alleged that the entry was made below the actual cost, with the design, &c.. and the court instructed the jury that the invoice must be falsely made, and with the design to evade the

---

[1] [Reported by George F. Emery, Esq.]

duties, and the jury found for the plaintiffs, it was held that judgment must be arrested.

[Distinguished in Friedenstein v. U. S., 8 Sup. Ct. 842, 125 U. S. 232. Cited in U. S. v. Fifteen Barrels Distilled Spirits, 51 Fed. 423.]

3. It seems that such an information should be brought in the name of the United States alone, without making the seizing officers parties.

B. F. Hallett, U. S. Dist. Atty.
Milton Andros, for claimant.

WARE, District Judge. An information was filed on the 4th of June, 1855, by the district-attorney, against three parcels of embroidery, imported into the port of Boston from Liverpool, England, as subject to forfeiture, for a violation of the 66th section of the collection law of 1799 (chapter 22). It is filed 'in the name and behalf, as well of the United States as of Charles H. Peaslee, collector of the port of Boston and Charlestown, in said district, and all other persons concerned.' At the last term of the court the case was given to the jury, and they returned a verdict for the plaintiffs; a motion was then made, January 2, by the counsel for the claimants, in arrest of judgment, for the supposed errors and insufficiency of the information, and several causes were assigned for the motion. The first, then, in natural order, though not in that adopted in the motion, is, that there is a misjoinder of parties. The form in which the information is presented, makes Peaslee, collector, as much a plaintiff as the United States. By the 88th section of the act, it is ordered that 'all penalties accruing by any breach of this act shall be sued for and recovered in the name of the United States of America.' This is indeed an information in rem for a forfeiture, but I can see no reason for a distinction in this respect, between a suit in rem for a forfeiture, and a suit in personam for a penalty; and certainly when a statute peremptorily requires a suit to be in the name of a particular plaintiff, it would seem to be the intention of the legislature, that his name alone should stand as plaintiff on the record, and this inference would appear to be strengthened when that plaintiff is the United States. The reason for making the collector a party is presumed to be because he is supposed to have an interest in the suit, and the technical reason, on the general principles of law, would be strong for making him and other officers of the customs, who share in the forfeiture, parties, if they had an interest that was absolute and indefeasible. But their rights are precarious, and dependent entirely on the pleasure of the United States. Without their consent, their interest may be released at any time, even after judgment, and until the proceeds are paid over to the collector and ready for distribution. McLane v. U. S., 6 Pet. [31 U. S.] 404; U. S. v. Morris, 10 Wheat. [23 U. S.] 288. The technical reason for the joinder therefore fails.

By the general provisions and policy of the law, as well as by the practice of the courts, the seizing officers have no authority, nor are they allowed ordinarily in any way, to interfere in the management of the suit through its whole progress, from the beginning to the end. There is, therefore, no reason for making them joint plaintiffs, but an obvious impropriety in doing so. When a forfeiture is ascertained and declared, it accrues in law to the United States. They receive it under the law, partly to their own use and partly as trustee for those who are entitled under the law. But this peculiarity is attached to the trust, that the trustee is not compellable to execute it, but may at pleasure remit the whole forfeiture to the claimant. This view of the subject also seems to me to be confirmed by the general character of our fiscal laws. The sole purpose of the penalties and forfeitures with which they are so profusely studded, is the protection of the revenue. It is no part of their object, in a just and legal sense, to enrich the officers of the customs. The shares allowed to them are not allowed as a part of their compensation, in a legal sense. Their services are compensated by their salaries, and their shares of forfeitures are pure gratuities, given to quicken their diligence in the performance of duties for which they are otherwise fully paid. The promises held out to them by the law are, in theory, promises without consideration, mere nude facts, and therefore, on general principles, are not binding upon the promisors. And they are not only so in theory, but so held in practice. A gift becomes irrevocable only when executed, when the thing is delivered; and the right of the officers of the customs to their shares in forfeitures, becomes perfect only after they are paid over. There are, therefore, no reasons, so far as I can see, founded on general principles, why the seizing officer should be made a party plaintiff. There is a dictum in the case of Gelston v. Hoyt, 3 Wheat. [16 U. S.] 313, thrown out arguendo, that he may be a co-plaintiff. The question did not arise in the case, and it has not, therefore, the authority of a decision. The reason given for it is, that he has an interest in the case; but if I have a correct view of the law, it is not such an interest as entitles him to make himself a party; and if it be not, there is an obvious reason why he should not be clothed with the rights of a party to interpose in the management of the suit. And such appears to have been the course from the origin of the government. The direction of the first collection laws of 1789, c. 5, § 36 [1 Stat. 47], was, that suits for penalties, under that act, should be in the name of the United States. This was copied into the amended act of 1790, c. 35, § 69 [1 Stat. 177], and from that transferred to the last general collection law of 1799, c. 22, § 88. The same direction is given in the registry act of 1792, c. 6, § 8 [1 Stat. 232], and in the

act for enrolling and licensing vessels of 1789, c. 11, § 21. But, however the law may be, the practice seems to have been various from an early time. In this district, it seems to have been customary for a long period, if not from the beginning, to join the collector in a libel of information, with the United States, and there is a precedent in Dunl. Adm. Prac. p. 372, said to have a very high authority, which is in exact conformity with this information. In the district of Maine, the only one of which I have any particular knowledge, the practice, until quite recently, was to bring the suit in the name of the United States alone. The district-attorney contends that the joinder is justified by long, if not immemorial usage, in this district, and that if in strict law it is open to objection, that the exception is declinatory in its nature, and is waived by going to trial on the merits, and cured by verdict. On the other hand, it is contended that the joinder being against the express words of the statute, the exception is fatal at any stage of the suit, before final judgment.

I do not, however, find it necessary to decide the case on this question, because there is another ground on which, in my opinion, the judgment must be arrested.

The other causes assigned for the arrest of judgment, and which have been insisted upon in the argument, may all be resolved into one, and that is, that the offence is not set out in the information with that clearness and distinctness which is required by the rules of pleading and the practice of the courts. It was long ago held by the supreme court, that an information to recover a penalty under the collection act of 1799, is in the nature of a criminal proceeding. Locke v. U. S., 7 Cranch [11 U. S.] 339; Clifton v. U. S., 4 How. [45 U. S.] 242. The description of the offence for which the penalty is demanded, must have the same kind and degree of certainty that is ordinarily required in other criminal proceedings. And although it may be true, as is argued by the district-attorney, that in the practice of our courts, all that technical accuracy of description may not be required which is held to be essential in indictments, and even in the exchequer practice, in England; and that niceties need not be observed which rest on dry precedent, the reason of which has either ceased to exist or cannot now be discovered, it is still indispensable that every circumstance constituting the offence be clearly and distinctly set out in plain and direct averments. It is not sufficient to show, that a man learned in the law may find in the information, by comparing one part with another, a full description of the offence. It is, I apprehend, necessary that the offence be charged in such plain and positive terms, that a plain and unlearned man, inops consilii, may clearly understand, by reading the information, what is charged upon him, and to what he is required to answer, and so,

also, that a jury equally unlearned, may understand, from the information, what they have to pass upon. Guided by these principles, let us first look at the law which creates the offence, and then at the description of it in the information.

The language of the law is, 'That if any goods, wares, or merchandise, of which entry shall have been made in the office of a collector, shall not be invoiced according to the actual cost thereof, at the place of exportation, with a design to evade the duties thereupon, or any part thereof, all such goods, wares, or merchandise, or the value thereof, to be recovered of the person making the entry, shall be forfeited.' It is very clear from this language that three facts must concur to complete the offence: First, an entry must be made of the goods. Second, they must be invoiced, not according to their actual cost. Third, they must be thus invoiced, with the design to evade the duties thereupon, or upon some part thereof. Each of these facts must be found to entitle the plaintiffs to a verdict, and all of them being necessary to constitute the offence, each should be plainly and distinctly charged in the information.

To ascertain whether they are thus charged, let us look at the information. I read all that part which is descriptive of the offence. The allegation is, that an entry of these goods 'was then and there (at Boston, May 26, 1855) made upon an invoice then and there produced, as and for the true invoice of said goods and merchandise according to law, when, in fact, the said entry was so made upon said invoice, below the actual cost of said goods at the place of export, and said entry was so made under the true value and cost of said goods, with the design then and there to evade the payment to the said United States, of that part of the duties chargeable according to law, upon the cost and value of said goods, which was chargeable upon the excess of said actual cost and value according to law, over and above the reduced and false value, at which said goods were so entered, as aforesaid, the said goods, wares, and merchandise, being then and there imported into the United States from a foreign country, and being then and there liable to the payment of duties upon an entry upon an invoice according to their actual cost or true market value at the place of export.' Now to complete the offence, there must be, undoubtedly, a corrupt design to defraud the United States in the duties, and there must be some act done towards carrying that design into execution; and it appears to my mind quite clear, that in order to bring the case within the reason of the law, this design must have existed at the time of making the invoice, and that the invoice itself must be prepared and concocted for the purpose of carrying that design into effect. The criminality of the fraudulent design is attached to the mak-

ing of the invoice, and not to the entry. The entry may be honestly made by an agent, who knows nothing of the fraudulent under-valuation; and if the forfeiture attached to the criminal intent in the entry, it might easily be avoided by keeping the consignee in ignorance of the actual cost. To prevent this, the law fastens the forfeiture to the first act in the series, by which the fraud is intended to be perpetrated, and by which it may be effected, though all the subsequent agents are innocent. The case was so put to the jury, and they were told, before they could find a verdict for the plaintiffs, they must be satisfied not only that the invoice was false, but that it was made so with the design of defrauding the United States of the duties, or a portion of them. The jury may be presumed, under the instruction of the court, to have found the fact, although it is not distinctly charged in the informa-tion.

And I now come to the question, whether there is any sufficient allegation in the in-formation, that the goods were not invoiced according to their actual cost, with the de-sign to evade the payment of the duties, or any part thereof? And I think there is not. The information seems to have been framed on the idea that the forfeiture attached to the design of fraud in making the entry. The entry is charged to be made on said in-voice, below the actual cost. What invoice is here meant? It is described above as an invoice produced, as and for the true invoice. But it is not declared to be false, except by way of inference; again, it is charged that the entry was made with a design to evade the duties; but it is nowhere distinctly and plainly charged, that a false invoice was made with that design. Under this section of the statute, it appears to me that this de-sign in making the invoice is an essential part of the offence. If it is so, the rules of pleading require that it be distinctly alleged. If it be said that the jury, under the direc-tion of the court, found the fact, it is still true that by the strict rules of pleading in penal causes, the plaintiff can recover only according to his allegation as well as his proofs. My opinion on the whole, is, that judgment must be arrested.