## FRIEDENSTEIN *v.* UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 178. Argued February 10, 1888. — Decided March 19, 1888.

In a suit *in rem* against certain diamonds seized as forfeited for a violation of the customs revenue laws, it was competent for the United States to give in evidence the declarations of S., not the claimant, who was intrusted by the latter with the custody of the diamonds for sale, such declarations having been made to a customs officer who took the diamonds from a person with whom S. had deposited them, and in the course of an investigation by the officer to determine whether he should seize them, and having been part of the *res gestæ*.

It was also competent for the officer to testify that he did not seize the diamonds till after the declarations were made.

The jury having found, in compliance with § 16 of the act of June 22, 1874, c. 391, 18 Stat. 189, that the acts complained of in the information were done with intent to defraud the United States, and no motion to dismiss the cause for any defect in the information, and no motion in arrest of judgment, having been made, any such defect which could have been availed of by demurrer, or exception, or motion to dismiss at the trial, made on the ground of such defect. or motion in arrest of judgment, must be regarded as having been waived or as having been cured by the verdict.

An information under the revenue laws for the forfeiture of goods, which seeks no judgment of fine or imprisonment against any person, is a civil action.

Yet it is so far in the nature of a criminal proceeding that a general verdict on several counts in the information is upheld if one count is good.

Where the sections of the Revised Statutes on which the counts of the information are founded do not prescribe any intent to defraud as an element of the forfeitures they denounce, said § 16 does not make it necessary, in an information filed since its enactment, to aver that the alleged acts were done with an actual intention to defraud the United States.

It is not necessary that the judgment should recite the finding by the jury that the acts complained of in the information were done with intent to defraud the United States.

IN REM, for the forfeiture of diamonds seized for a violation of customs revenue laws. Decree of condemnation in the District Court, which was affirmed by the Circuit Court. Claimant sued out this writ of error.

*Mr. Edwin B. Smith* for plaintiff in error. *Mr. Leopold Wallach* was with him on the brief.

*Mr. Solicitor General* for defendant in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a suit brought by the United States, in the District Court of the United States for the Southern District of New York, to condemn 43 diamonds, seized as forfeited under the customs revenue laws. The information contains five counts.

The first count is based on §§ 2872 and 2874 of the Revised Statutes, and alleges that the goods were brought in a vessel, name unknown, from ——, a foreign port or place, and were, on the —— day of ——, 1882, unladen and delivered from such vessel within the port and collection district of the city of New York, without a permit from the collector and naval officer for such unlading or delivery, contrary to those two sections, and that the value of the goods, according to the highest market price of the same at the said port and district, amounts to $400.

The second count is based on § 3066, and avers that the collector, having cause to suspect a concealment of goods in

the building No. 66 Nassau Street, in the city of New York, did, on the 27th of February, 1883, with due warrant therefor, enter the said building, in the daytime, and there search for such goods, and did then and there find the same concealed, and did seize and secure the same for trial, and that the duties had not been paid or secured to be paid thereon, contrary to said section.

The third count is based on § 2802, and avers that the said goods, being articles subject to duty, were, on the 27th of February, 1883, found in the baggage of a person arriving in the United States, and were not, at the time of making entry for such baggage, mentioned to the collector before whom such entry was made by the person making the same, contrary to said section.

The fourth count is based on § 2809, and avers that the said goods were, on the —— day of ——, one thousand eight hundred and ——, imported into the United States in the vessel, name unknown, belonging in whole or in part to a citizen or citizens, inhabitant or inhabitants of the United States, from a foreign port or place, and were not included in the manifest, and belonged or were consigned to the master, mate, officers, and crew of such vessel, contrary to said section.

The fifth count is based on § 3082, and avers that on or about the —— day of ——, one thousand eight hundred and ——, an unknown person did fraudulently and knowingly import and bring into the United States, and assist in so doing, the said goods, contrary to law, and did receive, conceal, buy, sell, and in some manner facilitate the transportation, concealment, and sale of such goods after their importation, knowing the same to have been imported contrary to law, contrary to said section.

One Augusta Friedenstein put in a claim to the goods as owner, and answered the information, denying the forfeiture. The case was tried by a jury in the District Court, which rendered "a verdict for the informants and against the claimant for the condemnation of the goods mentioned in the information, and that the acts complained of therein were done with intent to defraud the United States." A decree of

condemnation was entered thereon, and the claimant took the case by writ of error to the Circuit Court, which affirmed the decree of the District Court and remanded the case thereto for execution of the decree. The claimant has brought the case to this court by a writ of error.

The bill of exceptions shows the following state of facts in regard to the seizure of the goods: On the 27th of February, 1883, one Brackett, a special agent of the Treasury Department, went with two subordinates to the store of Goldsmith & Kuhn, No. 66 Nassau Street, where they found a man and a woman and the package of diamonds. The woman was a Mrs. Sussman. When Brackett reached the store, the diamonds were in the possession of Goldsmith & Kuhn. They told Brackett that Mrs. Sussman had handed the diamonds to them. Mr. Kuhn, who was behind the counter, had the package and handed it to Brackett upon his demand for it. Brackett took it, and requested Mrs. Sussman to accompany him to the custom-house, as he wished to make some inquiries about the diamonds. He took them to the custom-house, Mrs. Sussman accompanying him. In answer to a question put to Brackett by the counsel for the claimant, on his examination as a witness, as to when he took the diamonds, he said: "I took them at the store and took her down to the custom-house with them. If her explanation was satisfactory I did not intend to seize them." The package was opened at the custom-house, and the diamonds were examined and appraised, and were then placed in the hands of the officer in charge of the seizure room at the custom-house. Brackett was then asked by the district attorney: "When and where did you make the seizure of these diamonds?" To this question the claimant objected, as calling for a conclusion of law; but the court overruled the objection, and the claimant excepted. The witness replied: "The seizure of the diamonds was made at the custom-house in this city after I was through with my investigation."

It appeared that after Brackett and Mrs. Sussman arrived at the custom-house, and before the package was there opened, a conversation took place there between him and her. The bill of exceptions says:

"The witness Brackett was recalled, and asked this question by the district attorney: 'Now state the conversation between Mrs. Sussman and yourself which occurred prior to the actual seizure of those diamonds in the custom-house, and on the same day when she went in company with you to the custom-house with the diamonds.'

"The claimant objected to this question, because Mrs. Sussman's statement, under the circumstances and at that time, could not affect the claimant; also, because the question involved a conclusion of law as to the time when 'actual seizure' took place. The court overruled the objection, admitting the question, and the claimant excepted.

"The witness Brackett, in reply to this inquiry, testified as follows: 'Well, I asked Mrs. Sussman from whom she got the diamonds. She said they belonged to another party, but she could not give the name of the party, neither would she give her own proper name. I told her, 'If you can give a satisfactory explanation, and if these goods have been brought into the port properly, and duties paid, the United States government don't want them; why do you object?' 'Well,' she says, 'I can't mention the name of the lady to whom these stones belong.' Well, she finally said to me, after some twenty minutes, perhaps, of conversation — there were two other parties in the room, Mr. Cohen sitting outside, and the door open — she said, 'I would like to see you in private.' 'Well,' said I 'these are my offices here; this is all private — these offices.' 'No,' said she, 'I want to speak to you alone.' Well, I went into the adjoining room with her, and she then said to me, 'These diamonds belong to a lady, as I said before, whose name I won't give. The duty has not been paid on these diamonds. I am ready to go now before the collector and make arrangements to have the duties paid.' 'Well,' said I, 'I cannot do that, madam.' 'Well,' she says, 'I am ready; it can't be over $400.' I then went back to the room and told her that I could not make any such arrangement with her as that; the diamonds were then [not?] under seizure; then I made up my mind to seize them after this conversation. She said the duty would not be over $400; she was ready to go

before the collector and make arrangements to pay that duty.' The witness also testified that he sent for Gen. Palmer, and that Mrs. Sussman reiterated to Gen. Palmer what she had said to him, the witness.

"To further sustain the issues the government then called George W. Palmer, who, after testifying that he was the deputy collector in charge of the seventh division or law department of the custom-house, proceeded, under the objection of claimant's counsel, which objection was overruled and an exception to such ruling duly taken, to give in detail a conversation which he had with Mrs. Sussman at that time, of a similar nature to that testified to by Captain Brackett.

"It was also proved for the government, and acknowledged by Mrs. Sussman, when on the stand on behalf of the claimant, that she, Mrs. Sussman, had been to Europe and had returned from thence and landed at the port of New York in the latter part of August, 1882."

The ground urged against the admissibility of the conversation with Mrs. Sussman is that, she not being the owner of the diamonds, evidence as to her declarations was not admissible in derogation of the title to them, especially because such declarations were made after she had ceased to have the custody of them; and that it was error to permit Brackett to swear that, although he took physical possession of the property at 66 Nassau Street, before the conversation with Mrs. Sussman, he did not make the actual seizure until he made it at the custom-house, after the conversation with Mrs. Sussman.

But we see no objection to the evidence. It is plain, on the testimony, that the goods were not seized for forfeiture until after the conversation, and that the seizure took place at the custom-house, after the investigation and examination there, and did not take place at 66 Nassau Street. See *Four Packages* v. *United States*, 97 U. S. 404, 411. The second count of the information does not allege that the seizure took place at 66 Nassau Street. Its fair import is that the collector, with a warrant, entered those premises and searched for the goods and there found them, and that he afterwards seized and secured them for trial.

Mrs. Sussman, as appears from other evidence in the bill of exceptions, had carried the diamonds to the store of Goldsmith & Kuhn for the purpose of selling them to that firm. If they really belonged to the claimant, they had been put by her into the custody of Mrs. Sussman, for the purpose of selling them. Under these circumstances, Mrs. Sussman's declarations to Brackett, in regard to the goods, while he was making an official investigation and examination as to whether they should be seized for forfeiture, were part of the *res gestæ*, and admissible in evidence as against the person claiming to be the owner of the goods, in a suit *in rem* for their forfeiture. It was competent for the claimant to contradict the facts stated to Brackett by Mrs. Sussman, in regard to the diamonds; but the minutes of the trial show that, although Mrs. Sussman was examined as a witness for the claimant, the claimant herself did not testify as a witness.

We see no objection to the evidence shown by the bill of exceptions to have been admitted under the exceptions of the claimant.

The claimant raises a point as to the sufficiency of the information. The record shows a full compliance with the statute in regard to the finding by the jury that the acts complained of in the information were done with intent to defraud the United States. It does not show that any motion in arrest of judgment was made; nor that any motion was made on the part of the claimant to dismiss the cause for any defect in the information. It is stated in the minutes of trial, which are contained in a paper aside from the bill of exceptions and forming no part of it, that, after the evidence for the United States had been put in, the counsel for the claimant moved to dismiss the case, and the motion was denied; but it is not stated on what ground the motion was made. Under these circumstances, any defect in the information which could have been availed of by demurrer, or by exception, or by a motion to dismiss at the trial, made on the ground of such defect, or by a motion in arrest of judgment, must be regarded as having been waived, or as having been cured by the verdict. *Coffey v. United States*, 116 U. S. 436.

Among the objections covered by the above observations are those to the first count, that it does not name any vessel, that it does not name the foreign port or place or state that its name was unknown, that it does not state any day or month of the unlading, and that it does not state that there was then a naval officer at the port of unlading; that to the second count, that it does not allege that the goods were dutiable or' imported; those to the third count, that it does not name the person arriving in the United States, nor allege that his name was unknown, nor when he arrived, nor at what port he arrived, nor who was the collector, nor that these things were unknown, nor, affirmatively, that any entry was made of the baggage in which the goods were found; those to the fourth count, that it avers no day, month, or year, no port, domestic or foreign, no vessel, no owner, no consignee, and does not affirmatively state the existence of any manifest in which the goods should have been included; those to the fifth count, that it does not name time, place, person, or circumstance in regard to the importation, that it is bad for duplicity, because the importation is distinct from the subsequent dealing with the imported goods, and that it does not state what the illegality was in the importation.

This is a civil cause. In *Snyder* v. *United States*, 112 U. S. 216, it is said that informations under the revenue laws for the forfeiture of goods, seeking no judgment of fine or imprisonment against any person, are civil actions, although so far in the nature of criminal proceedings that a general verdict on several counts in an information is upheld if one count is good. This latter rule was also applied in *Locke* v. *United States*, 7 Cranch, 339; in *Clifton* v. *United States*, 4 How. 242, 250; and in *Coffey* v. *United States*, 116 U. S. 427, 433, 434, 436, 442. In *The Palmyra*, 12 Wheat. 1, 12, it is said that informations of seizure for forfeitures " are deemed to be civil proceedings *in rem;* " and the existence of Rule 22 of the Rules of Practice adopted by this court for the courts of the United States, in admiralty and maritime jurisdiction, on the instance side of the court, prescribing the contents of informations on seizures for a breach of the laws of the United States, shows

that such seizure cases are regarded as civil suits. The authority to make the Rule was conferred by § 6 of the act of August 23, 1842, c. 188, 5 Stat. 518, which relates wholly to the making of rules in suits at common law and in admiralty and equity. The case of *United States* v. *Three Parcels of Embroidery*, 3 Ware, 75, relied on by the plaintiff in error, is distinguishable from the present case. There the statute required, in order to forfeit goods, that they should not have been invoiced according to their actual cost, and that that should have occurred with a design to evade the duties thereon; and it was held, on a motion in arrest of judgment, that an information was bad which only alleged the making of an entry with a design to evade the duties, and did not allege the making of a false invoice with such design.

Section 954 of the Revised Statutes, which was always in force as § 32 of the act of September 24, 1789, c. 20, 1 Stat. 91, provides, that no judgment or other proceedings in civil causes, in any court of the United States, shall be arrested or reversed for any defect or want of form; but such court shall proceed and give judgment according as the right of the cause and matter in law shall appear to it, without regarding any such defect or want of form, except those which, in cases of demurrer, the party demurring specially sets down, together with his demurrer, as the cause thereof. This statutory provision applies to many of the objections urged to the information in the present case. These and the other objections mentioned were not taken in the court below by demurrer or exception or motion in arrest of judgment, and there has been a verdict of condemnation. As was said in *Lincoln* v. *Iron Co.*, 103 U. S. 412, 415, if the issue joined be such as necessarily required on the trial proof of the facts defectively stated or omitted, and without which it is not to be presumed that the judge would have directed the jury to give the verdict, such defect or omission is cured. See, also, *Stockton* v. *Bishop*, 4 How. 155, 167.

There is, however, one objection made to the information which it is proper to notice, as the question is an important one, and arises now for the first time in this court. It is pro-

vided as follows by § 16 of the act of June 22, 1874, c. 391, (18 Stat. 189): "That in all actions, suits, and proceedings in any court of the United States, now pending, or hereafter commenced or prosecuted, to enforce or declare the forfeiture of any goods, wares, or merchandise, or to recover the value thereof, or any other sum alleged to be forfeited by reason of any violation of the provisions of the customs revenue laws, or any of such provisions, in which action, suit, or proceeding, an issue or issues of fact shall have been joined, it shall be the duty of the court, on the trial thereof, to submit to the jury, as a distinct and separate proposition, whether the alleged acts were done with an actual intention to defraud the United States, and to require, upon such proposition, a special finding by such jury; or, if such issues be tried by the court without a jury, it shall be the duty of the court to pass upon and decide such proposition as a distinct and separate finding of fact; and in such cases, unless intent to defraud shall be so found, no fine, penalty, or forfeiture shall be imposed."

It is contended by the claimant, that it is necessary to aver, in an information filed since that statute, that the alleged acts were done with an actual intention to defraud the United States; and that, as no such averment is found in the information in this case, the judgment cannot be supported. But we are of opinion that such averment is not necessary. The section relates only to the duty of the court, on a trial by a jury or a trial without a jury, to require or make a special and separate finding as to the actual intention to defraud the United States. This is to be done in every suit of the character specified in the section, in which "an issue or issues of fact shall have been joined;" and the provision applies to suits then pending as well as to those thereafter to be commenced. The fair meaning of the section is that the issue or issues of fact shall have been framed, or shall be framed, in the usual manner theretofore in use. No one of the sections on which the counts of this information are founded prescribes any intent to defraud as an element of the forfeiture denounced in it; and, if § 16 of the act of 1874 is complied with, as it was in this case, at the trial of the cause before the jury, that is all that

is required. We do not concur in the view taken in *United States* v. *Ninety Demijohns of Rum*, 4 Woods, 637, so far as such view conflicts with our opinion herein.

Besides, with the knowledge on the part of the claimant and her counsel of the necessity that the United States should prove on the trial that the alleged acts were done with an actual intention to defraud the United States, and that the jury should so find, or no forfeiture could be imposed, it is impossible for the claimant to allege that she did not come to the trial with the understanding that such actual intention was matter to which proof, on the trial, was to be addressed, although there was no allegation to that effect in the information.

It is also objected, that the judgment of the District Court recites, as its basis, only the verdict of the jury, that it found for the United States, condemning the goods, and that it does not recite the finding by the jury that the acts complained of in the information were done with intent to defraud the United States. But we think that this was not necessary. As it appears by the minutes of the trial, that the jury made the finding of the intent to defraud required by the 16th section of the act of 1874, as a necessary condition precedent to the imposition of the forfeiture, the judgment of forfeiture is justified.

The verdict was a general one, for the informants and against the claimant, for the condemnation of the goods mentioned in the information, and is supported, if any count of the information is good, against the objections now made. *Clifton* v. *United States*, 4 How. 242, 250; *Snyder* v. *United States*, 112 U. S. 216; *Coffey* v. *United States*, 116 U. S. 427, 433, 436, 442. The bill of exceptions does not state that it sets forth all the testimony given on the trial, and the names of witnesses on both sides are given in the minutes of the trial as having been sworn whose testimony does not appear in the bill of exceptions. There is nothing to show that any motion was made by the claimant that the government should elect on which of the five counts it claimed a verdict. The third count alleges that the diamonds were articles subject to duty, and is a good count.

On the whole case, we see no error in the record, and

*The decree of the Circuit Court is affirmed.*

Mr. Justice Field, with whom concurred Mr. Justice Harlan, dissenting.

I am not able to concur in the judgment of the court in this case. The proceeding is a libel of information for the forfeiture of forty-three diamonds by reason of alleged violations of provisions of the customs revenue statute. The several acts for which a forfeiture is sought are not alleged to have been committed with any actual intent to defraud the United States, and yet the statute of June 22, 1874, declares that in all actions, suits, and proceedings then pending or thereafter commenced to enforce the forfeiture of any goods, wares, or merchandise, or to recover the value thereof, or any other sum alleged to be forfeited, by reason of any violation of the provisions of the customs revenue laws, in which issues have been joined, " it shall be the duty of the court, on the trial thereof, to submit to the jury, as a distinct and separate proposition, whether the alleged acts were done with an actual intention to defraud the United States, and to require upon such proposition a special finding by such jury ; or if such issues be tried by the court without a jury, it shall be the duty of the court to pass upon and decide such proposition as a distinct and separate finding of fact ; and in such cases, unless intent to defraud shall be so found, no fine, penalty, or forfeiture shall be imposed." 18 Stat. 189, c. 391, § 16.

The statute thus makes the actual intent to defraud the gist of the offence, and an essential element of it, without proof of which no forfeiture can be adjudged. What must be found ought, according to well settled rules of pleading, to be averred. In every suit for penalties or forfeitures what must be proved to entitle the complaining party to judgment against either person or property must be averred in the libel; and its omission will not be cured by any verdict in the case. Defects in matters of substance are not thus cured. *United States* v. *Hess,* 124 U. S. 483. It may be that libels of information for the forfeiture of goods do not require such fulness and particularity of averment as an information for the punishment of a criminal offence, but there is no decision, or even dictum, I have

been able to find, that an entire omission of all averment, as to the essential fact to be established, to justify a forfeiture or conviction, is not fatal. If any different rule has prevailed in any portions of the country, I do not think it should be sustained. This singular result would follow: that a defendant or claimant, admitting all the allegations of the libel, would escape forfeiture or punishment, for without proof of something not alleged, neither could be imposed.

In the case of *The Hoppet*, decided as far back as 1813, 7 Cranch, 388, 394, a libel of information was held insufficient which contained a general reference to the provisions of the statute alleged to have been violated. And the court, speaking by Chief Justice Marshall, said that "a rule so essential to justice and fair proceeding as that which requires a substantial statement of the offence upon which the prosecution is founded, must be the rule of every court where justice is the object, and cannot be satisfied by a general reference to the provisions of a statute." It was accordingly held in that case that, the information being defective in that respect, the defect was not cured by evidence of the facts omitted to be averred, the court stating that "the accusation on which the prosecution is founded should state the crime which is to be proved and state such a crime as will justify the judgment to be pronounced. The reasons for this rule are: 1st. That the party accused may know against what charge to direct his defence. 2d. That the court may see with judicial eyes that the fact alleged to have been committed is an offence against the laws, and may also discern the punishment annexed by law to the specific offence. These reasons apply to prosecutions in courts of admiralty with as much force as to prosecutions in other courts. It is therefore a maxim of the civil law that a decree must be *secundum allegata* as well as *secundum probata*. It would seem to be a maxim essential to the due administration of justice in all courts."

In the *United States* v. *Three Parcels of Embroidery*, 3 Ware, 75, it was held that the omission in a libel of information for the forfeiture of those articles for violation of the 66th section of the Collection Act of 1799, 1 Stat. c. 22, p. 627, to

allege that the goods were falsely invoiced with a design to evade the duties was a fatal defect in the proceeding, and was not cured by the verdict of the jury. In considering the omission in that case in arrest of the judgment on the ground that the offence was not set out in the information with that clearness and distinctness which is required by the rules of pleading and practice, the court said: "It was long ago held by the Supreme Court that an information to recover a penalty under the Collection Act of 1799 is in the nature of a criminal proceeding. *Locke* v. *United States,* 7 Cranch, 339; *Clifton* v. *United States,* 4 How. 242. The description of the offence for which the penalty is demanded must have the same kind and degree of certainty that is ordinarily required in other criminal proceedings; and although it may be true, as is argued by the District Attorney, that in the practice of our courts all that technical accuracy of description may not be required, which is held to be essential in indictments, and even in the exchequer practice in England, and that niceties need not be observed which rest on dry precedent, the reason of which has either ceased to exist or cannot now be discovered, it is still indispensable that every circumstance constituting the offence be clearly and distinctly set out in plain and direct averments."

The language of the 66th section of the act of 1799, under which the libel in that case was filed, declared "that if any goods, wares, or merchandise, of which entry shall have been made in the office of a collector, shall not be invoiced according to the actual cost thereof at the place of exportation, with design to evade the duties thereupon, or any part thereof, all such goods, wares, or merchandise, or the value thereof, to be recovered of the person making entry, shall be forfeited." 1 Stat. 677. And the court held that from this language three facts must concur to complete the offence. First, an entry must be made of the goods. Second, they must be invoiced not according to their actual cost. Third, they must be invoiced with a design to evade the duties thereupon, or upon some part thereof. And that each of these facts must be found in order to entitle the plaintiffs to a verdict, and, all

of them being necessary to constitute the offence, each should be plainly and distinctly charged in the information. It was charged that the entry of the goods was made with a design to evade the duties, but it was nowhere distinctly and plainly charged that a false invoice was made with that design; and the court said : "Under this section of the statute it appears to me that this design in making the invoice is an essential part of the offence. If it is so, the rules of pleading require that it be distinctly alleged. If it be said that the jury, under the direction of the court, found the fact, it is still true that, by the strict rules of pleading in penal causes, the plaintiff can recover only according to his allegation, as well as his proofs," and the judgment was arrested. This case, it is true, comes from a District Court, and is therefore not a controlling authority here, but the great learning of the District Judge, and the ability which marked all his opinions, have deservedly entitled them to great weight and consideration in all the federal courts; and the doctrine declared is sustained by a multitude of decisions.

Much stress is laid upon the fact that an information or other proceeding for the forfeiture of goods for a violation of provisions of the customs revenue acts is in form a civil action; but I do not perceive that this fact changes the necessity of alleging, as well as proving, the material facts upon which alone a forfeiture can be adjudged. Though the same strictness in pleading is not required in civil as in criminal actions, in neither can that which is essential to be proved be omitted to be averred. As Chief Justice Marshall indicates in the quotation above, adherence to this rule would seem to be essential to the due administration of justice in all courts; and it may be added, in all proceedings before them, civil or criminal, upon which their judgment is asked.

In the recent case of *Boyd* v. *United States*, 116 U. S. 616, 634, this court held "that proceedings instituted for the purpose of declaring the forfeiture of a man's property by reason of offences committed by him, though they may be civil in form, are in their nature criminal."

Nor do I perceive that the question of pleading is affected

by the fact, that the statute, requiring the fraudulent intent to be proved, applied as well to pending actions and proceedings as to such as might be subsequently commenced.   That fact, it is true, might in some cases have compelled an amendment of the pleadings in pending actions and proceedings to make their allegations embrace the essential element of the offence for which the forfeiture was sought; and such an amendment, where a fraudulent intent was not already alleged, was, as I think, contemplated.   I cannot believe that Congress intended, by making the law applicable to pending cases, to change a long and well-established rule of pleading, one founded upon manifest principles of justice, so as to allow a conviction of an offence upon which a forfeiture could be adjudged, without averring the fraudulent intent upon proof of which alone such forfeiture could be claimed.

A jury should not be allowed to find as to any material fact not alleged.   Evidence upon such a fact would be evidence upon something out of the case presented.   Even in ordinary civil cases such evidence is not admissible.   Much more strictly should the rule be enforced in penal cases like this one.   In *United States v. Ninety Demijohns of Rum,* 4 Woods, 637, 639, the libel of information was for the forfeiture of those goods for a violation of provisions of the customs revenue law. It made no allegation of actual intent to defraud the United States, and it was held that the libel was fatally defective. Referring to § 16 of the act of June 22, 1874, 18 Stat. c. 391, 186, 189, the court said : " I think it perfectly clear that this section makes intent to defraud the United States a necessary condition to the forfeiture of any goods, etc., for the violation of the customs revenue laws.   A libel of information, therefore, which undertakes to state a case for the forfeiture of goods should aver an intent to defraud the United States. Without such averment no case for forfeiture is made.   The claimant might well decline to answer a libel in which such averment was wanting, trusting to the court to dismiss the libel for want of necessary averments, when it came to hear the case *ex parte,* and to adjudge thereon as to law and justice should appertain.   .   .   .   The libel must set up all the facts

necessary to a forfeiture. If it fails to do this it is the duty of the court to dismiss it, whether issue is joined or not."

Concurring fully in these views, I dissent from the judgment of the court.

MR. JUSTICE BRADLEY was not present at the argument of this case, and took no part in its decision.