UNITED STATES v. FIFTEEN BARRELS OF DISTILLED SPIRITS.

(*District Court, D. Kentucky.* April 12, 1892.)

CUSTOMS DUTIES—FALSE ENTRIES—INFORMATION OF FORFEITURE.
  Where an information of forfeiture of certain spirits, on the ground that they were imported in violation of Rev. St. § 2864, charges, among other things, that the said spirits were imported by means of an entry which was false, in that it stated that the spirits were "American whisky reimported in the same condition as when exported," it is good as to this specific allegation.

2. SAME—INDEFINITENESS—WORDS OF STATUTE.
  An article is bad for indefiniteness which charges a violation of that section in the general terms of the statute as follows, namely: That said spirits were entered by the owner, consignee, or agent knowingly, "by means of the said invoice, which was then a false invoice, and by means then and there of a false certificate of a consul, vice consul, or commercial agent; and by means of the said invoice, which then and there did not contain a true statement of all the particulars therein required by the statutes of the United States, and by means then and there of other false and fraudulent documents and papers, and by means of other false and fraudulent practices and appliances."

**3. SAME.**

Articles charging in like manner, in the general words of the statute, a violation of Act June 10, 1890, § 9, and alleging the use of all the means prohibited by the statute, by all the possible persons, are likewise bad for indefiniteness.

At Law. Information filed August 21, 1891, as follows:

*To the Honorable, the Judge of the District Court of the United States for the District of Kentucky, sitting at Louisville, Ky.:* Be it remembered that on the 21st day of August, in the year of our Lord one thousand eight hundred and ninety-one, comes George W. Jolly, the attorney for the United States in the district of Kentucky, to prosecute a civil action in which the United States is concerned, and informs the court that the United States of America hereby brings this suit against certain property and merchandise, described as follows, to wit: Fifteen barrels of distilled spirits, marked and numbered as follows: 12,010, 12,011, 12,012, 12,013, 12,015, 12,016, 12,018, 12,019, 12,020, 12,021, 12,022, 12,023, 12,027, 12,031, and 12,032, and containing five hundred and two taxable gallons of distilled spirits, being within the district of Kentucky, in the custody of D. R. Collier, of Louisville, Ky., as an officer of the customs of the United States, to wit, as surveyor of the port of Louisville, in the district of Kentucky, which said goods and merchandise, to wit, said fifteen barrels of distilled spirits, the said D. R. Collier, on the fifth and sixth days of June, in the year of our Lord one thousand eight hundred and ninety-one, within said district of Kentucky, being then and there such surveyor as aforesaid, did seize on land and secure as liable to seizure and forfeiture to the United States by virtue of certain acts of congress of the United States respecting the revenue; and that said surveyor, hitherto having retained the said goods and merchandise, to wit, said fifteen barrels of distilled spirits, in his custody within the district of Kentucky, as forfeited as aforesaid, has caused this suit to be commenced upon the said seizure, and to be prosecuted for the said forfeiture. And the said attorney for the United States in that behalf doth articulately propound the matters relied on as grounds and causes of the said forfeiture, as follows, to wit:

For that on or about the 22d day of September, in the year of our Lord one thousand eight hundred and ninety, the said goods and merchandise, to wit, said fifteen barrels of distilled spirits, were imported and brought into the United States, to wit, into the port of New York, at the city of New York, in the United States of America, from Hamilton, Bermuda, a foreign port or place, in a ship or vessel called the Orinoco, and transported from the said port of New York thence to the port of Louisville, in the district and state of Kentucky, by railroad, and were so imported subject to the payment of specific duties to the United States.

For that afterwards, to wit, on the 22d day of September, in the year of our Lord one thousand eight hundred and ninety, at the office of the collector of the said district of the city of New York, in the city of New York, an entry in writing of the said goods and merchandise, to wit, the said fifteen barrels of distilled spirits, purporting to be duly signed, was made with Joel B. Erhardt, who was then and there the collector of said district aforesaid, by N. Hofheimer & Co., as the importer thereof, for immediate transportation in bond to the port of Louisville, in the district of Kentucky, and said goods and merchandise, to wit, said fifteen barrels of distilled spirits, were allowed to be shipped immediately after said entry, and were delivered to and transported by a common carrier, namely, the Baltimore & Ohio Railroad Company, to the port of Louisville, in the state and district of Kentucky, and afterwards, to wit, on the 26th day of May, in the year of our Lord one thou-

sand eight hundred and ninety-one, at the office of the said surveyor of said port, in the city of Louisville, in the state and district of Kentucky, an entry in writing of the said goods and merchandise, to wit, said fifteen barrels of distilled spirits, purporting to be duly signed, was made with the said D. R. Collier, who was then and there the surveyor of said district as aforesaid, by W. G. Coldewey, produced to the said surveyor, which entry and invoice were thereupon, then and there, verified, and said invoice signed in manner and form as required by law.

For that the said surveyor thereupon found, and it is hereby charged, that the said goods and merchandise, to wit, said fifteen barrels of distilled spirits, of which an entry was made and an invoice produced as aforesaid by the said owner, consignee, or agent thereof, and which were subject to the payment of specific duties as aforesaid, were then and there knowingly entered by the said owner, consignee, or agent thereof by means of the said invoice, which was then and there a false invoice, and by means then and there of a false certificate of a consul, vice consul, or commercial agent, and by means of the said invoice, which then and there did not contain a true statement of all the particulars therein required by the statutes of the United States, and by means then and there of other false and fraudulent documents and papers, and by means of other false and fraudulent practices and appliances, contrary to the statute of the United States in such case made and provided. Whereby and by force of the statute of the United States in such case provided, to wit, the 2864th section of the Revised Statutes of the United States, the said goods and merchandise became and are forfeited to the United States.

For that the said surveyor thereupon found, and it is hereby charged, that the said goods and merchandise, to wit, the said fifteen barrels of distilled spirits, of which an entry was made and an invoice produced as aforesaid by the said owner, consignee, or agent thereof, were then and there subject to a specific duty, and were then and there knowingly entered or attempted to be entered as aforesaid by the said owner, consignee, or agent thereof, by means of said entry, which was then and there a false entry, in this: that said goods and merchandise, to wit, said fifteen barrels of distilled spirits, were entered as American whisky, reimported in the same condition as when exported.

That on or about the 26th day of May, in the year of our Lord one thousand eight hundred and ninety-one, the said W. G. Coldewey, the owner, importer, consignee, or agent of the said merchandise, or some other person or persons now unknown to said surveyor and said attorney, made or attempted to make an entry as aforesaid of said merchandise, which was then and there subject to specific duties, and had been imported into the United States within said port of Louisville, in the city of Louisville, in the district and state of Kentucky, from Hamilton, Bermuda, a foreign port or place, by way of the port of New York, at the city of New York, in the ship Orinoco, from Bermuda to New York, and from New York to Louisville by railroad transportation, by means of a fraudulent and false invoice, affidavit, letter, and paper, and by means of certain false statements, written and verbal, and by means of certain false and fraudulent practices and appliances, by means whereof the United States was deprived of the lawful duties, or a portion thereof, accruing upon the said goods and merchandise, or a portion thereof, embraced and referred to in said invoice, affidavit, letter, paper, or statement.

Whereby, and by force of the statute of the United States in such case made and provided, to wit, the ninth section of the said act of congress, approved June 10, 1890, the merchandise herein proceeded against, being the whole of the merchandise contained in the barrels and packages containing

the particular merchandise, to wit, distilled spirits, to which such fraudulent and false paper and statement related, became and is forfeited to the United States.

For that on or about the 26th day of May, in the year of our Lord one thousand eight hundred and ninety-one, the said W. G. Coldewey, the owner, importer, consignee, or agent for the said merchandise, to wit, said fifteen barrels of distilled spirits, or some other person or persons now unknown to said surveyor and to said attorney, made or attempted to make an entry as aforesaid of said merchandise, which was then and there subject to specific duties, and had been imported into the United States at the port of Louisville, in the city of Louisville, in the district of Kentucky, from Hamilton, Bermuda, a foreign port or place, by way of the port of New York, in the ship or vessel Orinoco from Bermuda to New York, and from New York to Louisville by railroad transportation, and that the said owner, importer, consignee, or agent, and other person or persons unknown, was and were then and there guilty of certain willful acts and omissions, by means whereof the United States was deprived of its lawful duties, or a portion thereof, accruing upon said goods and merchandise, or a portion thereof, affected by such acts or omissions.

Whereby, and by force of the statute of the United States in such case made and provided, to wit, the ninth section of the said act of congress, approved June 10, 1890, the merchandise herein proceeded against, to wit, distilled spirits, being the whole of the merchandise contained in the barrels and packages containing the particular distilled spirits to which said alleged frauds and said acts and omissions related, became and is hereby forfeited to the United States. And thereupon, and by reason of, all and singular, the premises, the said attorney for the United States prays the court that due process issue to enforce the forfeiture of the said goods and merchandise, and to give notice to all persons concerned in interest to appear and show cause, on the return day of process, why the said forfeiture should not be decreed.

GEO. W. JOLLY, United States Attorney, District of Kentucky.

On October 12, 1891, the claimant filed exceptions to the information, as follows:

*First.* For that the invoice mentioned in the said information is not so specifically described, nor its contents so stated, as to enable said claimants to know what invoice is meant, nor wherein it is claimed to be false.

*Second.* For that the said information does not state who the consul, vice consul, or commercial agent was who gave the false certificate alluded to in said information.

*Third.* For that the said information does not show wherein such certificate is claimed to be false.

*Fourth.* For that the said information does not show what were the other false and fraudulent practices and appliances charged against the owner, consignee, or agent of said distilled spirits, by means of which it is claimed that they became forfeited to the United States.

*Fifth.* For that the said information does not show what was the false invoice, affidavit, letter, or paper, or what were the certain false statements, written or verbal, or what were the certain false and fraudulent practices and appliances, by means whereof the United States is alleged to have been defrauded of its lawful duties upon said spirits, or a portion thereof.

*Sixth.* For that the said information does not show what were the certain willful acts and omissions by means whereof the United States was deprived of its lawful duties, or a portion thereof, accruing upon said spirits,—in all

which particulars the said information is imperfect and insufficient, and therefore the said claimant is not bound to answer the same further, and prays that the said information may be dismissed.

December 29, 1891, exceptions Nos. 1 and 2 overruled, and Nos. 3, 4, 5, and 6 sustained. On February 9, 1892, the United States attorney moved to set aside the order sustaining the exceptions, and on April 12, 1892, the motion was sustained as to exception No. 3, and overruled as to Nos. 4, 5, and 6.

*George W. Jolly*, U. S. Atty., cited *The Confiscation Cases*, 20 Wall. 104; *The Caroline*, 7 Cranch, 496; *The Emily & Caroline*, 9 Wheat. 381.

*Walter Evans, James Pirtle, Muir & Heyman*, and *Gibson, Lochre & Marshall*, for claimants.

BARR, District Judge. The only specific charge in these informations is that the distilled spirits were imported by means of an entry which is false, in that it stated that the spirits were "American whisky, reimported in the same condition as when exported." If the United States is confined to this specific charge, the informations are sufficient; but I do not understand that the district attorney expects to be thus confined, and he has moved the court to set aside the former order, upon the idea that the informations are sufficient to allow any and every offense covered by the statute to be proven. Rule 22 in admiralty declares that "all informations and libels of information upon seizures for any breach of the revenue or navigation or other laws of the United States shall state the place of seizure, * * *. and the district within which the property is brought, and where it then is. The information or libel of information shall also propound in distinct articles the matters relied on as grounds or causes of forfeiture." The information before me (No. 4,206,) seems to have three distinct articles, though not numbered or distinctly separated as they should be. I will, however, consider the information as if the articles were separated.

The article which is first in the information is good, if confined to the distinct and specific charge as indicated above; but the general charges in this article are in the alternate, and about as indefinite as it is possible to make them. Instead of giving notice to those who may claim the seized articles of "the matters relied on as grounds or causes of forfeiture," the information alleges all of the grounds mentioned in the statute, and in the general terms of the statute. This is true as to the other articles in this information. It is true that the disjunctive "or" is not used quite as frequently in the information as in the statute, but otherwise the information is about as broad as the statute, and as indefinite, as applied to a special case. Thus section 2864 enacts that—

"If any owner, consignee, or agent of any merchandise shall knowingly make, or attempt to make, an entry thereof by means of a false invoice or false certificate of a consul, vice consul, or commercial agent, or any invoice which does not contain a true statement of all the particulars hereinbefore required, or by means of any other false or fraudulent practices or appliances whatsoever, such merchandise, or the value thereof, shall be forfeited."

And the allegation of the information is that said distilled spirits were entered by the said owner, consignee, or agent knowingly—

"By means of the said invoice, which was then a false invoice, and by means then and there of a false certificate of a consul, vice consul, or commercial agent, and by means of the said invoice, which then and there did not contain a true statement of all the particulars therein required by the statutes of the United States, and by means then and there of other false and fraudulent documents and papers, and by means of other false and fraudulent practices and appliances."

Again, the ninth section of the act of June 10, 1890, enacts—

"That if any owner, importer, consignee, agent, or other person shall make, or attempt to make, any entry of imported merchandise, by means of any fraudulent or false invoice, affidavit, letter, paper, or by means of any false statement, written or verbal, or by means of any false or fraudulent practice or appliance whatsoever, or shall be guilty of any willful act or omission, by means whereof the United States shall be deprived of the lawful duties, or any portion thereof, accruing upon the merchandise, or any portion thereof, embraced or referred to in such invoice, affidavit, letter, paper, or statement, or affected by such act or omission, such merchandise * * * shall be forfeited."

The second article of the information thus alleges the cause of seizure under this act:

"That on or about the 26th of May, 1891, the said W. G. Coldewey, the owner, importer, consignee, or agent of the said merchandise, or some other person or persons now unknown to the said surveyor and said attorney, made, or attempted to make, an entry, as aforesaid, of said merchandise, which was then and there subject to specific duties, and had been imported into the United States within said port of Louisville by means of a fraudulent and false invoice, affidavit, letter, and paper, and by means of certain false statements, written and verbal, and by means of certain false and fraudulent practices and appliances, by means whereof the United States was deprived of the lawful duties, or a portion thereof, embraced and referred to in such invoice, affidavit, letter, paper, or statement."

And the third article of this information alleges the grounds for the seizure thus, viz.:

"That said owner, importer, consignee, or agent, and other person or persons unknown, was and were then and there guilty of certain willful acts and omissions, by means whereof the United States was deprived of its lawful duties, or a portion thereof."

It is evident that a claimant of the property seized can get no information from these general allegations as to the real grounds of the forfeiture. There would have been labor saved if the allegations had been that section 2864 of the Revised Statutes and section 9 of the act of June 10, 1890, had been violated, and the claimants would have been quite as much enlightened as by these allegations. The case of *The Caroline*, reported in 7 Cranch, 496, 9 Wheat. 381, and *The Confiscation Case of Slidell*, 20 Wall. 104, sustain the proposition that the charges in an information may be made in the alternative. The *Caroline* was seized and sought to be condemned under an information which charged that she was fitted out at the port of Charleston for the purpose of engaging in

the slave trade, or that she was sailed from the same port (Charleston) for the purpose of engaging in the slave trade. The statute made either the fitting out of a vessel or the causing it to sail, for the purpose of carrying on trade or traffic in slaves, an offense, and the objection was that it was alleged in the alternative. In *The Confiscation Case*, the court strongly intimated that the objection to the information, if taken before judgment, would have been good. In both cases a claimant would have known the property was sought to be forfeited for the offenses set out, although they were alleged in the alternative in the information. In the one case, it was fitting out the vessel seized in the United States for the purpose of engaging in the trade or traffic in slaves, or it was the causing the vessel to sail from a port of the United States for the same purpose; in the other, the property seized was alleged to be the property of one or other of the persons described and declared to be enemies, and as such subject to forfeiture. But in this information every allegation is in the alternative, or so general as to give no definite information. Thus it is Coldewey or some other person unknown who made the entry, or attempted to make the entry, of the distilled spirits. The means by which this entry, or attempted entry, was made is described as by "a fraudulent and false invoice, affidavit, letter, and paper," and "certain false statements, written and verbal," and "certain false and fraudulent practices and appliances." If the inquiring claimant of the property seized, who may be an innocent purchaser for value, is not satisfied with the information given in these statements, he certainly will not be further enlightened by the additional charge in third article of that information, which is that "said owner, importer, consignee, or agent, and other person or persons unknown, was and were, then and there, guilty, of certain willful acts and omissions, by means whereof the United States was deprived of its lawful duties, or a portion thereof."

If informations like these are sustained as good under the twenty-second rule in admiralty, because the general language of the statutes are used, and all of the possible persons and all of the means which the statutes prohibit are alleged to have been used, then, indeed, a most ingenious way has been found not to "propound in distinct articles the matters relied on as grounds or causes of forfeiture," while seeming to do so in superabundance. In the case of *The Hoppet*, 7 Cranch, 389, in which the vessel was sought to be forfeited because of the violation of "An act to interdict commercial intercourse," etc., the information alleged that certain goods of the growth, produce, or manufacture of France were imported into the United States, to wit, into the port of New Orleans, in said vessel, (Hoppet,) from some foreign port or place, to wit, from St. Bartholomew, contrary to and in violation of the 4th, 5th, and 6th sections of the act; by reason of which, and by virtue of the act of congress entitled, (giving the title,) the said vessel, her tacks, apparel, and furniture, have become forfeited to the United States. But the vessel was not alleged to have violated these sections of the law in any special manner, and the question was, could the forfeiture of the vessel be sustained under such an information? Chief Justice MARSHALL said:

"It is not controverted that in all proceedings in courts of common law, either against the person or the thing, for penalties or forfeitures, the allegation that the act charged was committed in violation of law, or of the provisions of a particular statute, will not justify condemnation, unless, independent of this allegation, a case be stated which shows that the law has been violated. The reference to the statute may direct the attention of the court and of the accused to the particular statute by which the prosecution is to be sustained, but forms no part of the description of the offense. The importance of this principle to a fair administration of justice, to that certainty introduced and demanded by the free genius of our institutions in all prosecutions for offenses against the laws, is too apparent to require elucidation, and the principle itself is too familiar not to suggest itself to every gentleman of the profession. Does this rule apply to information in a court of admiralty? It is not contended that all those technical niceties which are unimportant in themselves, and standing only on precedents of which the reason cannot be discerned, should be transplanted from the courts of common law into the courts of admiralty. But a rule so essential to justice and fair proceeding as that which requires a substantial statement of the offense upon which the prosecution is founded must be the rule of every court where justice is the object, and cannot be satisfied by a general reference to the provisions of a statute."

If this rule thus laid down by Chief Justice MARSHALL is "not satisfied by a general reference to the provisions of a statute," can it be by a mere recital of the general provisions of a statute? We think not. See, also, *U. S.* v. *Three Parcels of Embroidery*, 3 Ware, 75; *U. S.* v. *Distillery*, 4 Biss. 27; Dunl. Adm. Pr. p. 116.

2 Abb. U. S. Pr. p. 85, says:

"But this rule, that to follow the words of the statute is enough, has limits. It does not apply where the statute requires or indicates a fuller statement, nor when the language of the statute is such that to follow it without discrimination would lead to inconvenient uncertainty or ambiguity."

See, also, *The Mary Ann*, 8 Wheat. 380.

In the recent cases of *Friedenstein* v. *U. S.*, 125 U. S. 225, 8 Sup. Ct. Rep. 838, and *Origet* v. *U. S.*, 125 U. S. 240, 8 Sup. Ct. Rep. 846, informations like the ones at bar were before the supreme court, but the court declined to pass upon the defects which it was insisted existed, because they had been waived, in the one case by not making the objection in the lower court, and in the other because the bill of exceptions was defective, and the question was not properly before the court. The first article of these informations, if that article was separated from the others, is, I think, good as to special charge. The former order should perhaps be modified, but I am still of the opinion these informations, except the first article, are not sufficiently definite.