## UNITED STATES v. TWENTY-FIVE PICTURES.

(District Court, S. D. New York.   July 7, 1919.)

1. CUSTOMS DUTIES ⊙—133—TECHNICAL DEFECTS IN PROCEEDINGS FOR FORFEITURE DISREGARDED.
   Technical defects in an information for forfeiture of merchandise for importation in violation of the customs laws will be disregarded, unless timely objection is made.

2. CUSTOMS DUTIES ⊙—130—EVIDENCE SUFFICIENT TO SUSTAIN FORFEITURE FOR FRAUDULENT IMPORTATION.
   Under Rev. St. § 3082 (Comp. St. § 5785), providing for forfeiture of merchandise fraudulently or knowingly imported contrary to law, failure of the importer to produce a consular invoice or other evidence required by statute as to the character or value of the merchandise or to declare the same is sufficient to establish a fraudulent importation, regardless of whether or not the merchandise is in fact dutiable.

3. CUSTOMS DUTIES ⊙—38(13)—FREE LIST—WORKS OF ART—"REPLICAS"—"REPRODUCTIONS."
   In Tariff Act Oct. 3, 1913, § 1, Free List, par. 652 (Comp. St. § 5291), permitting free importation of original paintings in oil, including not more than two replicas or reproductions, the words, "replicas or reproductions" are intended to embrace only works of the artist who made the original.
   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Reproduction.]

Forfeiture for Violation of Customs Laws.   Libel by the United States against Twenty-Five Pictures.   Judgment for the United States.

Francis G. Caffey, of New York City (Julian Hartridge, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Charles H. Griffiths, of New York City, for claimant.

AUGUSTUS N. HAND, District Judge.   This is a libel to forfeit certain pictures for violation of the customs laws.   They were purchased by one Kahn in Russia and brought in by one Macbeth, as Kahn's agent, who did not mention them in his baggage declaration, produce a certified consular invoice for entry, or otherwise disclose their existence.   The inspector testified that he asked Macbeth if he had brought over anything obtained abroad, and he said he had not.   The goods were landed on the wharf in three packages and evidently escaped notice.   They were seized some 6 months afterwards.   The appraiser thought that 7 of them were oil paintings over 100 years old, 13 were original paintings, and 2 were copies over 100 years old.   The remaining 3 designs were not paintings, and were classified as "three designs of manufactured paper," apparently under paragraph 332 of Act Oct. 3, 1913, c. 16, § 1, schedule M, 38 Stat. 146 (Comp. St. § 5291), subject to duty at 25 per cent.   It may be they should have been classified as originals or replicas under paragraph 652 below, and free.

The Tariff Act provides:

"Section 376 (Schedule N), Works of art, including paintings in oil or water colors, * * * 15 per centum ad valorem."

"Free List.

"Paragraph 652.   Original paintings in oil,  *  *  *  including not more than two replicas or reproductions of the same.  *  *  *"

"Paragraph 656.   Works of art (except rugs and carpets), collections in il· lustration of the progress of the arts, works in bronze, marble, terra cotta, parian, pottery or porcelain, artistic antiquities, and objects of art of orna- mental character or educational value which shall have been produced more than one hundred years prior to the date of importation, but the free im- portation of such objects shall be subject to such regulations as to proof of an- tiquity as the Secretary of the Treasury may prescribe."

Article 395 of the Customs Regulations, 1915, requires that works· of art produced more than 100 years prior to the date of importation shall have accompanying the invoice certificates and affidavits bearing on the age and character of the goods.

It is evident from the foregoing that imported oil paintings are subject to a 15 per cent. duty ad valorem, unless they are originals or copies (not exceeding two) by the same artist, or unless they are over 100 years old.   In the last case proof of antiquity must accompany them.

Under section 3 E of the Customs Administrative Act (see Under- wood Tariff Act Oct. 3, 1913, c. 16, 38 Stat. 182 [Comp. St. § 5522]) it is provided:

"That, except in case of personal effects accompanying the passenger, no importation of any merchandise exceeding $100 in value shall be admitted to entry without the production of a duly certified invoice thereof as required by law.  *  *  *"

Plainly the importation did not come within the term "personal ef- fects," and the exception and limitation were not applicable.

The failure of Macbeth to produce a duly certified consular invoice, coupled with his false statement to the inspector that he had purchas- ed nothing abroad, have established probable cause for the seizure and impose the "onus probandi" upon the claimant.   It is possible that he has established that 13 of the paintings were originals or replicas, and were consequently not dutiable.   If so, he has done this upon the mere opinion of Mr. Hecht, the government appraiser, given at the trial, and by no original or direct proof of the facts.   The alleged an- tique paintings were improperly introduced into the country, because they were neither invoiced nor accompanied by documentary proofs of their age, as required by paragraph 656, supra.   As the case stands, they are prima facie dutiable, irrespective of whether by proper procedure they could have been entered as free or not.

There is no proof that the 3 remaining articles were not dutiable, and Mr. Hecht classifies them as subject to duty.   All the merchandise was brought in contrary to law, because not accompanied by the certi- fied invoice required under section 3 E of the Customs Administrative Act.

Section 3082 of the United States Revised Statutes (Comp. St. § 5785) provides that:

"If any person shall fraudulently or knowingly import or bring into the United States, or assist in so doing, any merchandise, contrary to law, *  *  *  such merchandise shall be forfeited."

[1] The fourth count of the information, on which the government chiefly relies, is based upon this section, and merely alleges a violation of the section in the statutory language, without stating how the goods were imported "contrary to law." At the trial this count was discussed, and my impression has been that the government made the contention that the failure to produce a duly certified invoice was the ground of forfeiture relied on in that count. No motion to dismiss was made because the fourth count of the information was technically insufficient, and the case was closed under the apparent understanding of both sides that the issues were sufficiently defined. Thus the claimant fully apprehended, and had every opportunity to meet, the contentions of the government, and the trial was had upon the theory that the failure to produce a certified invoice and secure proper entry was the feature of illegality relied on in this count. Doubtless such a general allegation of violation of section 3082, supra, would have been held insufficient on demurrer, but defects of this kind in an information are waived unless objection is made in season.

The result of a trial surely ought not to be allowed to turn upon mere questions of pleading, further than may be necessary to secure an orderly presentation of the issues and to maintain the substantive rights of the parties. It is one thing to insist upon precise pleading when the parties, before testimony is taken, say they need such pleading to define the issues, and it is quite another matter to upset an entire trial, or, worse still, finally to determine the result upon a technicality of pleading, where the case was tried with an understanding of the issues, and no one was surprised or injured by the form of the information. Defects in informations, unless raised by timely objection, have been frequently disregarded. Friedenstein v. United States, 125 U. S. 225, 8 Sup. Ct. 838, 31 L. Ed. 736; Coffey v. United States, 116 U. S. 436, 6 Sup. Ct. 437, 29 L. Ed. 684. Moreover, this count was added without objection by the claimant. Since the trial I have given counsel for claimant an opportunity to open the case upon allowing an amendment to the government pointing out the precise objection, but counsel has said he did not care to offer further evidence or argument on this point. The question remains whether the words of section 3082, supra, "fraudulently or knowingly," make it necessary to show intent to violate the law on the part of the claimant, or his agent, in order to establish a cause of forfeiture under the fourth count.

[2] It was held by Judge Ray in the Case of Fifty Waltham Watch Movements (D. C.) 139 Fed. 291, and by the Supreme Court of Arizona, in Six Parcels of Placer Gold v. United States, 8 Ariz. 389, 76 Pac. 473, that a failure to comply with the customs provisions as to entry would not be excused in a proceeding to forfeit merchandise merely because the goods were not in fact dutiable. By both courts it was apparently thought than an intention to defraud the United States of customs revenues was not a necessary ingredient of the crime covered by section 3082. See, also, United States v. McKim, Fed. Cas. 15,693. I am inclined to think that proof of purpose to do the forbidden act is enough to satisfy the requirements of the provisions of section 3082. But if the addition of the word "fraudulently" (though

in the disjunctive) requires proof of an intention to defraud the government, the requisite fraud need not consist of deprivation of customs revenues. The collation of information in order to pass upon the classification of merchandise, and the question often most difficult as to whether it is dutiable, and, if so, just what duty is imposed, is an important function of the revenue department of the government. Without such information, the Customs Act cannot really be enforced or the revenues collected.

By the failure of the importer to comply with section 3 E and produce a consular invoice, any part of the shipment that was not original paintings or replicas or works of art over 100 years old apparently escaped duty, and the antiquities also escaped duty because the importer did not furnish satisfactory proof of age. Indeed, in the case of all this merchandise, any exemption and classification was dependent on proof. To deprive the United States of the information it was entitled to, and of the opportunity for investigation and classification afforded to it by the express provisions of section 3 E, was to defraud the United States. In Haas v. Henkel, 216 U. S. 462, 30 Sup. Ct. 249, 54 L. Ed. 569, 17 Ann. Cas. 1112, which was an indictment for a conspiracy to defraud the United States by bribing an employé of the Department of Agriculture to furnish secret information, the Supreme Court says that it is enough to defraud the government if an act is done calculated to obstruct or impair its efficiency and destroy the value of its operations and reports as fair, impartial, and reasonably accurate. See, also, Stager v. United States, 233 Fed. at page 511, 147 C. C. A. 396. It seems clear from the conduct of the importer that he avoided submitting the merchandise to the investigation which the production of a proper consular invoice and a regular entry would have involved, and that he did this deliberately and clandestinely, because he wished to take no chances of paying duty. Under such circumstances the fourth cause of forfeiture is clearly established.

[3] It has been urged by counsel for the claimant that all of the merchandise should have been classified under section 652, which covers, not only original paintings, but original drawings and sketches in pen and ink, "including not more than two replicas or reproductions of the same." It is contended that the words "replicas" and "reproductions" mean any copies, and that this statute is intended to place on the free list all works of art of this kind, whether wrought by the original artist or another. In other words, an importer could bring in free an original and two copies by any one of the same thing. A "replica" is defined by the Standard Dictionary as a "duplicate executed by the artist himself and regarded equally with the first as an original." I think a "reproduction," while it is sometimes loosely used as meaning a copy, does not really differ from a replica, within the meaning of the above section. It suggests the idea of a second effort by the same artist. Any other interpretation would make the word "original," as well as the clause "providing for replicas or reproductions," though not strictly meaningless, entirely unnecessary.

Moreover, the Tariff Act, under paragraph 376, subjected "works

of art, including paintings in oil, or water colors, pastels, pen and ink drawings, or copies, replicas or reproductions of any of the same," to a duty of 15 per cent ad valorem. Here it is to be noticed the word "copies," a word of much broader significance than "replicas" or "reproductions," is added. I think this shows that any of the paintings which were not originals, or were not reproductions made by the same artist, were subject to duty, unless they had been "produced more than 100 years prior to the date of importation"; but in the last case the free importation was "subject to such regulations as to proof of antiquity as the Secretary of the Treasury may prescribe." The prescribed regulations were not complied with and they therefore became dutiable. When paragraph 376 provides that works of art, including paintings, water colors, and pen and ink drawings, or copies, are in general subject to a duty of 15 per cent. ad valorem, it cannot be contended that the court can take judicial notice of the fact that the merchandise may be on the free list if the real facts were known, because it may be an original painting or a replica. If such is the law, the government would have to prove a negative in the case of the importation of any painting.

It is also to be remembered in this case that ample probable cause for the seizure of the merchandise has been shown. Under such circumstances, the burden of proof is shifted, and the claimant must satisfy the court that the seizure was not justified. Locke v. United States, 7 Cranch, 339, 3 L. Ed. 364.

The first count of the libel, which is for a false baggage declaration, must be dismissed; and it is ordered accordingly. The merchandise was not baggage, and not necessarily included in a baggage declaration.

The second count is upon the charge that the importer did knowingly and willfully, with intent to defraud the revenue of the United States, smuggle or clandestinely introduce. Undoubtedly to establish this count there must have been an intent to defraud the revenue. The importer may have hoped or believed the goods were not dutiable, but he preferred to take his chance of smuggling in his goods, rather than to rely upon his ability to satisfy the government as to the law or the facts. Three of the articles were dutiable under the ruling. The antiques have become dutiable because proof of age was not offered as required by law. Where in this merchandise there were certainly some dutiable articles, and there was a secret introduction of all the parcels at the same time for the plain purpose of avoiding examination and classification, I think enough has been shown to establish forfeiture under this count of all the things. This is especially so when the only ground for regarding any of the goods as free is the opinion of the government appraiser, Mr. Hecht, and not the slightest direct proof. It seems to me that the claimant has really done nothing to sustain the burden of proof resting on him. I accordingly direct a verdict for the government upon the second count of the libel as to all articles.

The third count, for not declaring these articles alleged to have been

found in the baggage, is dismissed, because there is no proof that they were so found, or were in any sense baggage.

A verdict is directed for the government upon the fourth count, and as to all articles, for the reasons already stated.