## SHORE v. UNITED STATES.
### No. 5393.

Court of Appeals of the District of Columbia.
Argued Nov. 3, 1931.
Decided Feb. 1, 1932.

William E. Leahy, Lucien H. Vandoren, and James F. Reilly, all of Washington, D. C., for appellant.

Leo A. Rover, James R. Kirkland, and J. J. Sirica, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

Appellant was convicted under the second count of an indictment founded on section 593(b) of the Tariff Act (42 Stat. 982, 19 USCA § 497). The count charged appellant with unlawfully receiving, concealing, buying, and selling, and facilitating the transportation, concealment, and sale of merchandise (in this case foreign whiskys, gin, etc.), subject to duty by law, which said duty was unpaid and unaccounted for.

There are eight assignments of error relied upon, but, since numbers 4, 5, and 6 relate to the same subject-matter, we shall discuss them as one.

Number 1 is to the denial of a jury trial on a motion to suppress; No. 2 to the refusal to quash the search warrant; No. 3 to refusal of the court to require the government attorney to furnish a bill of particulars; Nos. 4, 5, and 6 to the admission of evidence given by witnesses Conner, Curry, and Tippett during the trial; No. 7 to permitting the government chemist to express an opinion as to the authenticity of certain foreign revenue stamps; and No. 8 to the refusal to direct a verdict for defendant. We have given careful consideration to the argument under these

assignments and are satisfied that none of them ought to be sustained.

◼ The point made as to the first assignment is that the search warrant was invalid because issued without probable cause and in violation of the Fourth and Fifth Amendments of the Constitution. Upon a previous appeal involving contempt proceedings, and on substantially the same evidence, we decided that the search warrant was properly issued. Shore v. U. S., 60 App. D. C. 137, 49 F.(2d) 519. At the subsequent trial, appellant insisted that the question whether there was probable cause for the issuance of the search warrant was a question af fact and should be submitted to the jury, but since the decision in Steele v. United States, 267 U. S. 505, 45 S. Ct. 417, 69 L. Ed. 761, we regard that question as no longer debatable. It was there decided that the competency of the evidence (in that case, as in this, whisky) was a question of fact and law for the court and not for the jury.

◼ The second point, namely, that the search warrant was issued without probable cause in violation of the Fourth and Fifth amendments, we regard as res judicata by the decision of this court in the contempt proceeding, but, even if this were not so, we should adhere to the opinion expressed there.

◼ The third point is to the action of the court in overruling the motion for a bill of particulars. The indictment, as we have already seen, charged appellant with unlawfully importing into the United States intoxicating liquors (on which the jury acquitted), and of unlawfully receiving and concealing intoxicating liquors subject to customs duties. The object of the motion for the bill of particulars was to require the government to state the port of importation, but, as the question of venue was not involved, the information which the motion sought was not essential to the defense, for it was the fact of importation and not the place that mattered, nor does it appear that the government knew the port of importation. Indeed, the contrary appears. There are thousands of miles of seaboard on the Atlantic and Pacific Coasts and likewise thousands of miles of border between the United States and Canada and Mexico, nearly all of which offers the opportunity for illegal importation of liquor. If the government had known the place of importation, the probability is the offense would have been sooner detected and the importation prevented. It was in the circumstances, therefore, under no obligation to show any particular place at which the customs law was first violated. It was enough that it was violated somewhere, and that appellant, with knowledge of this fact, possessed and concealed the smuggled goods.

◼ The fourth, fifth, and sixth assignments relate to the admission of alleged erroneous and prejudicial evidence. One Conner, a driver of the express company, had testified that he delivered the trunks of whisky to appellant's place in Washington city. The trunks were consigned to F. H. Willoughby, in care of Frank Shore, 1223 New York avenue. This address was a garage owned and conducted by appellant. When the delivery was about to be made, Conner was informed by appellant's cashier, one May Money, that she did not know Willoughby, but would make inquiry, and that he heard her ask some one in the rear of the garage, and that a man's voice replied, "Yes; I know him. Bring them in." Whereupon Miss Money paid the express charges, received delivery of the trunks, and signed a receipt for them in the name of Willoughby. We think the evidence was proper to go to the jury, for, while it is true the voice from the rear of Shore's premises was not identified, the evidence showed that the place was his, and that he was there at the time and must have heard all that passed, and since the authorization to his cashier to accept the trunks involved their delivery on his premises and the payment of the express charges out of his money, the jury, we think, was entitled to consider the evidence as bearing upon the charge that the trunks were actually intended for delivery to him. Of course, such evidence is not conclusive, but, like other circumstantial evidence, it tended, if believed, to shed light upon the matter which the jury were charged to investigate, and in that aspect was admissible. If appellant possessed and concealed the liquor through the instrumentality of a servant or clerk in his employ, he would be just as guilty as if he had acted in his own behalf.

◼ We think that there is no point to the objection to the testimony of the witness Curry. This witness had testified to an examination of the custom house records at Miami, Fla., and that such an examination showed no importation of foreign liquor. Of course the rule is that the records themselves are the best evidence of their contents, but here the evidence sought was negative in character and only material if followed up by like evidence as to similar records in every one of the forty or fifty customs dis-

tricts; for, standing alone, it would prove nothing more than that there had been no valid importation through one such district, but, without regard to this, the best evidence rule was not violated by admitting the testimony, for it is always permissible to allow a person who has official custody of official records to testify that an examination showed that such a paper as is in issue is not among such records. If the rule were different, the required proof would often be impossible, for the deed books and order books of a court of record cannot be subpœnaed from one state or city to another, and, in such a case, in an effort to show that a particular deed is not of record, it is always permissible to allow the person having charge to testify that an examination made for that purpose showed no such deed. In this case, Curry was an inspector of customs at Miami, apparently in charge of the records and familiar with them, and his evidence of examination of them showing that no permit to import liquor was to be found was proper. If the effort had been to show that there was a permit, then of course the permit itself would have been the best evidence of its terms, but that was not the case.

The objection to the evidence of the witnesses Tippett and Dr. Young is so without basis as not to require further notice.

 We have examined the evidence on the merits, and we think that enough was proved to justify the verdict of the jury. The whisky in the trunks was examined by chemists. It contained labels usually found on imported whisky. These labels stated the contents to be Canadian, Irish, and Scotch whisky—in the case of the Canadian whisky, that it was manufactured by Wiser's Distillery, Prescott, Ontario, Canada; in the case of the Scotch whisky, that it was manufactured by Alex McGavin & Co. (Limited), Glasgow; in the case of the Irish, that it was labeled "Berk's Fine Old Irish Whiskey"; and this evidence, together with the evidence that it was packed in bags similar to those frequently used for imported "bootleg" liquor, and the evidence of the chemist that the contents corresponded with the labels, and that, in his opinion, the whisky was of foreign origin, was, we think, sufficient, without anything to the contrary, to justify the jury in reaching the conclusion that the whisky was of foreign manufacture.

A somewhat more difficult question arises as to whether the evidence, independently of the provisions of the statute which we shall presently notice, is sufficient to establish beyond a reasonable doubt that the whisky had been brought into the United States without the payment of custom duties, and that appellant knew it. Admittedly there is no direct evidence of illegal importation. The trunks were delivered to the express company at Miami, Fla. When found in possession of appellant in Washington and examined, they contained whiskies of foreign origin. It must be conceded, therefore, that, except for the presumption supplied by the statute itself, the prosecution must fail for lack of proof; but the section under which the indictment is drawn (19 USCA § 497) provides: "Whenever, on trial for a violation of this section, the defendant is shown to have or to have had possession of such goods, such possession shall be deemed evidence sufficient to authorize conviction, unless the defendant shall explain the possession to the satisfaction of the jury.".

There is a similar provision to be found in the Narcotic Law, and in Yee Hem v. United States, 268 U. S. 178, 45 S. Ct. 470, 472, 69 L. Ed. 904, it was argued that this provision violated the provisions of the Fifth Amendment with relation to self-incrimination. The Supreme Court held it did not. Mr. Justice Sutherland, who delivered the opinion of the court, said: "Every accused person, of course, enters upon his trial clothed with the presumption of innocence. But that presumption may be overcome, not only by direct proof, but, in many cases, when the facts standing alone are not enough, by the additional weight of a countervailing legislative presumption."

And again in Casey v. United States, 276 U. S. 413, 418, 48 S. Ct. 373, 374, 72 L. Ed. 632, which was also a narcotic case, it was said, citing Wigmore: "It is consistent with all the constitutional protections of accused men to throw on them the burden of proving facts peculiarly within their knowledge and hidden from discovery by the Government."

In both cases just cited, the statute was upheld and its effect declared to be to justify a conviction where the person found in possession of the outlawed thing stood mute and offered no satisfactory explanation of the manner or circumstances of such possession. It would seem to follow, therefore, that, unless the validity of the presumption created by the statute in the case of narcotics grows out of the nature of the thing itself, the rule should be held to apply equally here, for in this case the government proved that no permit to import whisky had been issued since 1921, or approximately nine years prior

to the seizure. In like circumstances as to opium, the Supreme Court said (Yee Hem Case, page 184 [of 268 U. S., 45 S. Ct. 470, 471]): "We think it is not an illogical inference that opium, found in this country more than 4 years (in the present case, more than 14 years) after its importation had been prohibited, was unlawfully imported. Nor do we think the further provision, that possession of such opium in the absence of a satisfactory explanation shall create a presumption of guilt, is 'so unreasonable as to be a purely arbitrary mandate.' * * * Legitimate possession, unless for medicinal use, is so highly improbable that to say to any person who obtains the outlawed commodity, 'since you are bound to know that it cannot be brought into this country at all, except under regulation for medicinal use, you must at your peril ascertain and be prepared to show the facts and circumstances which rebut, or tend to rebut, the natural inference of unlawful importation, or your knowledge of it,' is not such an unreasonable requirement as to cause it to fall outside the constitutional power of Congress."

If it is a logical inference that opium found in one's possession four years after the statute prohibiting its importation was passed was unlawfully imported, it would seem not illogical to infer that foreign whisky found in one's possession nine or ten years after importation was forbidden was likewise unlawfully imported, and since in the former case the requirement by Congress of explanation in rebuttal of the presumption is held not to be violative of any constitutional right, the same rule would seem to us to apply in the latter, and, if it does apply, the necessary measure of proof is supplied, since the record shows appellant made no effort to rebut the presumption, and, in this view, the judgment of the lower court should be affirmed.

Affirmed.