**BABB et al.  v.  UNITED STATES.**

No. 14435.

United States Court of Appeals,
Fifth Circuit.

Feb. 23, 1954.

Rehearing Denied March 29, 1954.

Coyne Milstead, W. H. Fryer, El Paso, Tex., for appellants.

Thomas E. James, Asst. U. S. Atty., Austin, Tex., Holvey Williams and Francis C. Broddus, Jr., Asst. U. S. Attys., and Charles F. Herring, U. S. Atty., El Paso, Tex., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and RIVES, Circuit Judges.

HOLMES, Circuit Judge.

In count one of a ten-count indictment, the appellants and others were charged with conspiring to smuggle and clandestinely introduce cattle into the United States contrary to law; and with conspiring to receive, conceal, and transport cattle, knowing the same to have been imported into the United States contrary to law: all in violation of Section 545 of Title 18 of the United States Code. The venue of the crime is laid in Hudspeth County, Texas, and the time is alleged to have commenced on or about October 1, 1951, and to have continued thereafter until the date of the indictment, which was December 15, 1952. Eighteen overt acts on as many different dates, to effect the object of the conspiracy, are charged in detail. Counts 2 to 10 of the indictment charge various substantive offenses with reference to smuggling, concealing, transporting, and introducing into the United States, different numbers of cattle on specific dates, knowing the same to have been stolen, transported, and imported into the United States, in violation of Sections 545, 2316, and 2317, of Title 18 of the United State Code. The cited statutes at the head of each count were as follows: 1st count: 18 U.S.C. § 371; 2nd and 3rd counts: 18 U.S.C. § 545; 4th, 6th, and 8th counts: 18 U.S.C. § 2316; 5th, 7th, 9th, and 10th counts: 18 U.S.C. § 2317.

After an extended trial on the merits, before the court and a jury, three of the defendants were acquitted; three were found guilty and given prison sentences; and one, upon conviction, was sentenced to pay a fine of $3000 and be imprisoned for two years, but the sentence of imprisonment was suspended and the defendant placed on probation for a period of two years. The three defendants who were convicted and required to serve prison sentences have appealed to this court, and contend that a number of prejudicial errors were committed against them by the trial judge. All of these assignments have received our careful consideration, and we shall discuss some of them in detail.

The appellants moved to dismiss the indictment, claiming that it failed to charge any offense against the laws of the United States, that there was no description of the cattle sufficient to identify them from other cattle, no allegation of ownership, and no allegation of when, where, or by whom the cattle were stolen or imported into the United States. The motion for a bill of particulars raised practically the same points. We think that the court below correctly overruled both motions. The indictment alleged that the cattle were smuggled and clandestinely introduced into the United States, one of the counts said they were brought in without being inspected and invoiced as required by law, some of the counts said they were brought in from Mexico, but all of the counts gave the approximate date, the number of cattle, and the venue of the offense, i. e. Hudspeth County, Texas, within the El Paso division. All of the counts were practically in the language of the respective statutes. It is common knowledge that Hudspeth County, Texas, is on the Mexican border, and it was immaterial from whom the cattle were stolen, except as it might become necessary to prove that they were in fact stolen.

Form 6 of the Federal Rules of Criminal Procedure, 18 U.S.C., illustrative of an indictment for transporting a stolen motor vehicle knowing it to have been stolen, does not describe the car, allege ownership, or give any of the facts relative to the theft of the car. The sole requirement under that form is that the vehicle was moving in interstate or foreign commerce and that the accused knew it to have been stolen. Form 7 for receiving a stolen motor vehicle is to the same effect. It was not necessary for the indictment to allege any particular place at which the custom law was first violated; it was enough that it was violated somewhere, and that the accused, with knowledge of these facts, possessed and concealed the smuggled goods. Shore v. United States, 61 App.D.C. 18, 56 F.2d 490. See also United States v. Kushner, 2 Cir., 135 F.2d 668, 673, certiorari denied 320 U.S. 212, 63 S.Ct. 1449, 87 L.Ed. 1850, wherein it is said: "Appellant was not entitled to know the Government's case in advance, and the district court did not abuse its discretion in denying the motion."

A motion for continuance is directed to the discretion of the trial court, and the court did not abuse its discretion in this case. Isaacs v. United States, 159 U.S. 487, 16 S.Ct. 51, 40 L. Ed. 229. Likewise, a motion for continuance based on the absence of a witness should be specific and state substantially what the witness would testify to if present, and should show wherein the absent witness' evidence would be material and competent. The motion for continuance in this case was materially lacking in many essential features; it did not allege specifically or substantially what Tom E. Grubb would testify to if present, and consequently it did not appear that if present his testimony would be material. Moreover, there was no assurance that he would testify at all if present as, being a defendant, he could not legally be compelled to testify.

There can be no reasonable doubt as to the substantiality of the evidence to support the verdict of the jury; we have none, and the verdict is evidence that the jury had none; in fact, no point on that issue was raised in the briefs or oral argument. The most serious assignment of error, in our opinion, is with reference to the seizures by custom officers of alleged stolen and smuggled cattle. This evidence was damaging to the appellants because it tended to identify the cattle that had been smuggled, concealed, or transported, by them in violation of federal laws. The fact that the seizures were made by custom officers, and indicated the commission of a federal crime not mentioned in the indictment, did not render inadmissible evidence that was otherwise relevant, competent, and material. The facts as to the seizures were merely explanatory of how the cattle came into possession of the custom officers. The relevancy of

this evidence arose out of what the officers discovered about the marks on the cattle after they had been seized. The marks or brands thereon indicated that they were the stolen, concealed, or smuggled cattle mentioned in the indictment. The cattle were seized for one alleged crime, and evidence of another was thereby disclosed. It was just as if a policeman searched a prisoner in his custody for one crime and found in the prisoner's possession property indicating his guilt of a different offense. It would be impossible to use the evidence of the latter crime without explaining that the prisoner was under arrest and in the lawful custody of the policeman, charged with another crime.

Moreover, if the people in possession of the cattle at the time of seizure had not been allowed to explain how they became bona fide purchasers thereof, a legal presumption against them might have arisen from their recent possession of stolen goods, and the jury might well have thought that some of them were guilty instead of the Babbs. It was incumbent upon the prosecution, under every count of the indictment, to prove that the cattle were stolen or smuggled into the United States. It was necessary to follow the cattle from the time they were handled by the Babbs until they were received and identified by the owner or were taken into possession by the officers who seized them. No importance was attributed to the seizures except in identifying the cattle and tracing them back to the appellants.

■ The marks and brands were cut off of several of them after some had died a natural death and after others had been slaughtered by the Government. These brands were before the jury as exhibits, and were very material in establishing original title in the Mexican owner, possession by appellants, and in corroborating the allegation in the indictment that they had been stolen or smuggled or both. These brands would have been meaningless without an explanation as to how the Government came into possession of them. The Government could not have shown that the brands taken off the cattle at the stock yards came from the stolen cattle if it had not traced the cattle, from which the brands came, to the stock yards, through the purchaser, through the auction livestock ring, through the trucking-contractor, and back to the Babbs. The seizures were a link in the chain, and no effort was made to show that there was any adjudication with reference to them. This evidence was not only material but essential in the identification of the cattle that were seized. This was a closely litigated case in the court below, nothing was conceded, and almost every move of the prosecution was met with an objection or exception.

■ Many of these exceptions have been rendered moot by subsequent events. Originally there were ten counts and eight defendants. Counts four and five were dismissed by the court. One of the defendants was sick and not put to trial, a severance being granted as to him. Another defendant was convicted on count one only: he appealed to this court and later dismissed his appeal. Three of the defendants, the three Wilkersons, who did the hauling, were found not guilty on all counts. This leaves only the three appellants, the Babb brothers, who were partners in the cattle business and were convicted of being partners in this crime. Dixie Babb was convicted on all counts except four and five, which were dismissed; Wayne Babb was convicted only on counts 1, 3, 6, 7, 8, 9, and 10; Irvin Babb was convicted only on counts 1, 2, and 8. Therefore, all rulings and exceptions that affected or prejudiced only defendants other than the three appellants have become moot. In this class is the testimony of the witness Taylor, who declined to haul the cattle because he did not think it was quite right and he did not want the cattle on his truck. This testimony (if of any weight) was prejudicial only to the trucking contractors, all of whom were acquitted. It did not tend to prejudice the appellants who were the head and front of the conspira-

cy and the principal actors in its execution.

 The court charged the jury that the hoof-and-mouth disease quarantine went into effect on December 26, 1946, and ceased to be effective on September 1, 1952; that this quarantine made it illegal to bring any live cattle into this country from Mexico during that period; and that, if the cattle mentioned in the indictment were brought in during that period, they would be deemed to have been brought in illegally. It is not contended that the law was erroneously stated but, since the hoof-and-mouth disease statute or regulation was not cited in the indictment, it is argued that it should not have been mentioned by the court, "no defendant being accused of a violation of that law." This position is not well taken: the nature and cause of the accusation in an indictment is determined by the facts therein alleged, not by the conclusions of law therein stated if the erroneous conclusion did not mislead the defendant to his prejudice.

Rule 7(c) of the Federal Rules of Criminal Procedure provides that the indictment shall be a plain, concise, and definite statement of the essential facts constituting the offense charged, and shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law, which the defendant is alleged to have violated, but error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice. No authority for their contention is cited by appellants, and we think their argument is fully answered by Rule 7(c), supra.

Finally, we think, the defendants in the court below had a fair trial before an impartial and pains-taking judge and jury. The verdict and sentence indicate that even-handed justice, tempered with mercy, was carefully meted to them in quantity and quality according to the individual guilt or innocence of each

one. We find no reversible error in the record, and the judgment appealed from is affirmed.

Affirmed.