MATTER OF D—

In EXCLUSION Proceedings

A-11149738

*Decided by Board April 4, 1962*

**Crime involving moral turpitude—18 U.S.C. 545—Smuggling with intent to defraud the United States.**

Conviction for smuggling with intent to defraud the United States in violation of 18 U.S.C. 545 is conviction of a crime involving moral turpitude.

EXCLUDABLE: Act of 1952—Section 212(a)(9) [8 U.S.C. 1182(a)(9)]—Convicted of crime involving moral turpitude, to wit, smuggling.

## BEFORE THE BOARD

**DISCUSSION:** On January 19, 1962, the special inquiry officer ordered the appellant excluded and deported from the United States on the above-indicated ground. The appeal from that decision, which brings the case before this Board for consideration, will be dismissed.

The record relates to a 31-year-old unmarried male alien, a native and citizen of Canada. On October 29, 1958, he was admitted to the United States in the status of a commuter. On November 20, 1961, in the United States District Court, Eastern District, Michigan, Southern Division, on his plea of guilty, the appellant was convicted of smuggling whiskey into the United States in violation of 18 U.S.C. 545, and was sentenced to two years of probation. On January 18, 1962, when he applied for admission as a commuter, he was referred to a special inquiry officer for hearing in exclusion proceedings, with the result here appealed from.

The basic issue before us is whether the crime of which the appellant stands convicted involves moral turpitude. The special inquiry officer has held that it does, relying fundamentally on a 1938 court decision, *infra*. The appellant, however, contends that the inherent nature of the offense has been changed by a subsequent enactment of the statute in different language. Thus, then, is the issue joined.

The appellant, having waived prosecution by indictment, was proceeded against by way of an information charging—

That on or about March 7, 1961, Detroit, Michigan, in the Eastern District of Michigan, Southern Division, H—D—, did knowingly and willfully, with

605

intent to defraud the United States, import and bring into the United States via the Ambassador Bridge, twenty-four bottles of whiskey, to wit: twenty-four bottles of whiskey labeled in part "Seagrams 83", which whiskey was imported and brought into the United States contrary to law in that no invoice was presented to the United States Collector of Customs and no entry filed as required by sections 1481 and 1484, Title 19, U.S.C.; in violation of section 545, Title 18, U.S.C.

Accordingly, as pointed out by the special inquiry officer, the appellant's conviction was had under the first paragraph of 18 U.S.C. 545, entitled "Smuggling Goods into the United States," which reads as follows:

Whoever knowingly and willfully, *with intent to defraud* the United States, smuggles, or clandestinely introduces into the United States any merchandise which should have been invoiced, or makes out or passes, or attempts to pass, through the customhouse any false, forged, or fraudulent invoice, or other document or paper. . .[1] (Emphasis supplied.)

The special inquiry officer's holding that respondent's conviction thereunder was for a crime involving moral turpitude was based, in great part at least, on the August 20, 1958, decision of the Court of Appeals for the Fifth Circuit in the case of *Guarneri* v. *Kessler*, 98 F.2d 580. That case involved an alien who, along with 15 other named persons, was accused of conspiring to smuggle, import and bring into the United States some 6,000 gallons of alcohol fit for, and intended for, beverage purposes, and with the substantive offenses of smuggling and concealing illegally imported alcohol after it came into the United States, all with intent to defraud the United States, in violation of 19 U.S.C. 1593(a) [the Tariff Act of 1930], which then read:

If any person knowingly and willfully, *with intent to defraud the revenue of the United States*, smuggles, or clandestinely introduces into the United States any merchandise which should have been invoiced, or makes out or passes, or attempts to pass, through the customhouse any false, forged, or fraudulent invoice, or other document or paper, every such person, his, her, or their aiders and abettors, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be fined in any sum not exceeding $5,000, or imprisoned for any term of time not exceeding two years, or both, at the discretion of the court. (Emphasis supplied.)

The thrust of the appellant's argument is that the omission of the words "the revenue" changes the essential element of the offense to such an extent that it no longer involves moral turpitude. It is his contention that, in view of the absence of the words "the revenue," the present offense does not contemplate an actual loss of Government income. He cites as authority for this proposition the case of *United States* v. *McKee*, 220 F.2d 266 (C.A. 2, 1955).

The *McKee* case, *supra*, involved persons indicted for conspiracy

---

[1] Shall be fined not more than $5,000 or imprisoned not more than two years, or both.

under the conspiracy statute, 18 U.S.C. 371, to smuggle, import, conceal, and transport a snowmobile in violation of the smuggling statute, 18 U.S.C. 545. In discussing the latter offense, the Court of Appeals for the Second Circuit, in its decision of March 3, 1955, said, in part:

We have earlier had occasion to consider the element of the crime here involved. In *United States* v. *Kushner*, 2 Cir., 135 F.2d 668, 670, certiorari denied *Kushner* v. *United States*, 320 U.S. 212, 63 S.Ct. 1449, 87 L.Ed. 1850, we held, somewhat reluctantly, that the then wording of the statute, "intent to defraud the revenue of the United States," contemplated an actual loss of government income. Since that time the statute has been amended to delete the specific reference to "revenue." We therefore hold that under the present section, 18 U.S.C. § 545 *supra*, it is no longer necessary to show that the item or items introduced clandestinely into the United States were subject to duty. Adequate reporting of merchandise being brought into the country is absolutely necessary to the enforcement of the customs laws, and failure to comply with these requirements is just as criminal as failure to pay the customs fees. See *United States* v. *Twenty-Five Pictures*, D.C.S.D. N.Y., 260 F. 851.

The *Kushner* case, *supra*, involved a person who, with four co-defendants, was accused, *inter alia*, of violating former 19 U.S.C. 1593(a), prohibiting smuggling "with intent to defraud the revenue of the United States," by importing and assisting the importation of undeclared gold bullion from Canada. The Court of Appeals for the Second Circuit in its May 5, 1943, decision in that case, although not free from doubt on the point, inclined to the view that an intent to deprive the Government of revenue must be held an ingredient of the crime defined in former 19 U.S.C. 1593(a). That is, the Court ruled that no conviction under said section could be had absent proof of financial loss to the Government, at least intended. However, in so ruling the Court pointed out (p. 671) that the expression "intent to defraud *the revenue* of the United States" (emphasis supplied) was a hardly grammatical expression the meaning of which was not wholly clear.

The case of *United States* v. *Twenty-Five Pictures*, *supra*, involved forfeiture proceedings as to paintings allegedly brought into the United States in violation of section 3082 of the United States Revised Statutes (Comp. St. 5785) providing that:

If any person shall fraudulently or knowingly import or bring into the United States, or assist in so doing, any merchandise, contrary to law, * * * such merchandise shall be forfeited.[2]

---

[2] This section later became 19 U.S.C. 1593(b), which read: "If any person fraudulently or knowingly imports or brings into the United States, or assists in so doing, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law, such merchandise shall be forfeited and the offender shall be fined in any sum not exceeding $5,000 nor less than $50, or be imprisoned for any time not exceeding two years, or both."

The portion of the Court's decision therein which is here pertinent states:

* * * if the addition of the word "fraudulently" (though in the disjunctive) requires proof of an intention to defraud the Government, the requisite fraud need not consist of deprivation of customs revenues. The collation of information in order to pass upon the classification of merchandise, and the question often most difficult as to whether it is dutiable, and, if so, just what duty is imposed, is an important function of the revenue department of the Government. Without such information, the Customs Act cannot really be enforced or the revenues collected.

* * * To deprive the United States of the information it was entitled to, and of the opportunity for investigation and classification afforded to it * * * was to defraud the United States. * * * it is enough to defraud the Government if an act is done calculated to obstruct or impair its efficiency and destroy the value of its operations and reports as fair, impartial, and reasonably accurate * * *.

Careful consideration of the foregoing judicial precedents convinces us of the lack of merit in the appellant's theory that the absence of the words "the revenue" from the statute as presently written changes the inherent nature of the offense. In our opinion the existence *vel non* of actual financial loss (income) to the Government is not dispositive of the question of whether the offense involves moral turpitude. We so hold.

The case of *United States* v. *Kushner, supra,* pointed up that the statutory phrase "intent to defraud *the revenue* of the United States" constituted a hardly grammatical expression the meaning of which was not free from doubt. The transfer of this offense from 19 U.S.C. to its present position in the statutory scheme was accomplished as a part of the revision, codification, and enactment into positive law of all applicable criminal laws in effect April 15, 1947, which became Title 18, United States Code. The revision aspect thereof meant the substitution of plain language for awkward terms and the elimination of archaic language employed in the old statutes (H. Rept. No. 304, 80th Congress, 1st session). Accordingly, and assuming as we must that the Congress was aware of the Court decision pointing up the unfortunate phrasing of former 19 U.S.C. 1593(a), we have an adequate explanation of the absence of the words "the revenue" from the statute in its present form.

We cannot agree with the appellant that the omission of those words removes from the statute now on the books the element essential to constitute the offense as one involving moral turpitude. The case of *United States* v. *McKee, supra,* merely stands for the proposition that a conviction under the statute no longer requires proof that the accused intended financial loss to the Government to result from his contemplated action. But this does not delete the element of fraud from the crime. As was pointed out by Judge Hand in the

case of *United States* v. *Twenty-Five Pictures, supra,* the element of deprivation of revenue (financial loss) is not an essential ingredient of fraud; but that fraud can consist of impairing or rendering unworkable an important function of a department of the Government; and, specifically, that to deprive the United States of information it is entitled to, and of the opportunity for investigation, is to defraud the United States. That is, it is enough to defraud the Government if an act is done, calculated to obstruct or impair its efficiency and destroy the value of its operations. Support for our ruling on this point, if same is needed, can be found in the decision of the Supreme Court of the United States in the case of *Jordan* v. *DeGeorge,* 341 U.S. 223, wherein it was stated:

. . . the decided cases make it plain that crimes in which fraud was an ingredient have always been regarded as involving moral turpitude.

Finally, we find unavailing appellant's alternative argument that the statute under which the appellant was convicted is divisible, and that thereunder he could have been convicted, in effect, of failing to file invoices or entry documents for merchandise which is not a crime involving moral turpitude. We here need not speculate as to the possible nature of the offense spelled out in the second portion of the statute, to wit, filing of invoices and entry documents. The reason is that the inherent nature of the crime of which this appellant stands convicted is established by the record of his conviction, including the information (indictment). That is, where, as here, the record of conviction clearly shows intent to defraud the United States involved in the commission of a crime contained in a divisible statute, we are justified in basing thereon a conclusion that the crime involved moral turpitude (*Matter of C—,* 5—65, at p. 71).

**ORDER:** It is ordered that the appeal be and the same is hereby dismissed.